GENERAL TELEPHONE COMPANY OF
CALIFORNIA, a corporation,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 62-479.

United States District Court
S. D. California,
Central Division.

April 1, 1963.

Albert M. Hart, H. Ralph Snyder, Jr., and Donald J. Duckett, Santa Monica, Cal., for plaintiff.

Francis C. Whelan, U. S. Atty., John B. Read, Asst. U. S. Atty., for United States.

CRARY, District Judge.

Plaintiff seeks reimbursement for costs of relocating certain telephone poles and lines, sometimes referred to as "facilities" or "plant", from their old location on state highway No. 150 to a new location on the said state highway as relocated and realigned by the State of California.

By their amended Agreed Statement of Facts, the parties state the pertinent facts involved substantially as follows. Pursuant to § 7901 of the Public Utilities Code of the State of California, the plaintiff, prior to 1960, had placed certain of plaintiff's facilities, consisting of telephone poles, cross arms, cable and other equipment, within state highway No. 150 between the cities of Lompoc and Surf in the State of California.

In May, 1960, the Division of Highways, State of California, notified the plaintiff of a proposed realignment of portions of state highway 150 where it abutted a Naval Missile Facility of defendant at Point Arguello, California. See letter dated May 26, 1960, Exhibit A to amended Agreed Statement of Facts hereafter referred to as "Agreed Facts." In that letter plaintiff was advised, among other things, that certain of its facilities would be affected by the proposed highway construction and plaintiff was requested to prepare cost estimates "for relocating the balance of your facilities to the new highway right of way

throughout the project. This request is being made as it is anticipated that your entire lead throughout the project will have to be placed along the new highway right of way to clear the old highway right of way, and the cost of this portion of the work will differ from the work being done for highway purposes." The letter went on to request that plaintiff move its facilities to the highway as realigned not later than July 15, 1960.

On August 10, 1960, the defendant, by letter, (Exhibit B to plaintiff's complaint) urgently requested that plaintiff remove its facilities promptly. In this letter plaintiff was advised that when the relocation work was completed the State of California would quit claim to the Government its interest in the affected portion of existing highway 150. The letter further stated, "There is at present, a doubt as to whether the franchise right enjoyed by utility companies in California highways is, in fact, a compensable interest. As long as this doubt remains, the Government cannot, of course, expend federal money on a noncompensable interest. * * * It is suggested that the lines be moved first and that the matter of compensation for the relocation be resolved thereafter."

On September 12, 1960, defendant granted an easement to the State of California for road purposes over the land where the state highway 150 was to be relocated and realigned (Exhibit C to Agreed Facts). The grant of easement was executed upon the consideration that on completion of the relocation of the state highway, the state would execute a quit claim deed granting to the Government all of its right, title and interest in the old highway location.

On or about November, 1960, and commencing November 8th of that year, plaintiff relocated its facilities from the old highway to the new highway. On May 2, 1961, the defendant received plaintiff's invoice in the amount of $9,122.86 for the cost of the relocation work requested by defendant. It was agreed by the parties during oral argument

that said amount was reasonable for the cost of such work.

On July 26, 1961, the California Highway Commission passed a resolution (Exhibit D to Agreed Facts) authorizing the quit claiming to defendant of its interests in said old highway. The resolution further provided that the Commission had approved " * * * the manner and terms and conditions of the transaction * * *".

The State of California, on August 18, 1961, quit claimed to the United States all its right, title and interest in and to said old highway (Exhibit D to Agreed Facts). Said deed recited that it was subject to "special assessments, if any, restrictions, reservations, and easements of record." The quit claim deed further provided that the state's title and interest in the old highway location had been acquired for state highway purposes and was no longer necessary therefor and was not at the time of the quit claiming being used for highway uses or purposes.

As noted above, the moving of the plaintiff's poles took place in November, 1960, approximately eight or nine months prior to the abandonment of the highway, depending on whether the resolution of the Highway Commission authorizing execution of the quit claim deed to defendant on July 26, 1961, or the execution of the quit claim deed on or about August 18, 1961, is considered to be the date of abandonment of the old highway from which the poles were moved. At the time the poles were moved they were, of course, located on a highway and under the terms of § 7901 of the Public Utilities Code there was no obligation, as a matter of law, at that time at least, requiring plaintiff to move its poles other than the poles which would actually interfere with the highway as relocated and realigned.

The poles were moved at the urgent request of the Government and the move was made with the understanding on the part of both parties as stated in the Government's letter to plaintiff (Exhibit B to plaintiff's complaint) that there

was at that time a doubt as to the compensability to plaintiff of the franchise right it enjoyed on California highways and that if the plaintiff did move its lines that the matter of compensation for the relocation would be resolved thereafter.

The movement of plaintiff's facilities, the cost of which now concerns us, was to permit the expansion of defendant's Naval Missile Facility at Point Arguello, California, and was not by reason of interference of the poles here involved with the use of the new location for highway purposes.

The case was submitted for decision on the above mentioned amended Agreed Statement of Facts, points and authorities filed by both sides, and after oral argument on March 25, 1963.

It appears to the court that the material issues involved are two in number:

1. Do the provisions of § 7901, Public Utilities Code of California, impose any obligation on plaintiff to move its telephone poles and attendant facilities in the instant circumstances at its own expense.

2. Is the Government obligated to pay the cost of moving plaintiff's facilities to their present location on the highway as relocated by the state when the moving was at a time some eight or nine months before the old highway was abandoned.

§ 7901 provides:

"Construction of lines Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this State, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters."

Plaintiff contends that under the terms of this statute it acquired a vested right "in the nature of an easement" which was not divested on the relocation of the highway by the California Highway Commission or on the state's abandonment of the said highway site for highway purposes, that under § 7901, plaintiff urges, it was not required to move its facilities once placed upon a highway unless and only in case its facilities interfered with the use of the location *for highway purposes*.

Plaintiff points out that in the instant case the new highway as relocated by the state did involve certain areas in which plaintiff's poles were located and which poles interfered with the use of the highway as relocated, that plaintiff moved said poles at its own expense (See Exhibit A to plaintiff's complaint for location of poles so moved) and admits that since the poles interfered with the use of the area of their location for highway purposes it was the obligation of plaintiff to move them at its own expense.

The Government asserts that under the provisions of § 7901 the plaintiff lost all rights and privileges to leave or maintain its poles on the old highway location on the abandonment by resolution of the California State Highway Commission in July or August, 1961, of said old location. As set forth above, the State of California quit claimed to the United States all its right, title and interest in the old highway location by deed dated August 18, 1961. See details re this deed in facts set out above. In further support of its theory, the Government urges that the franchise rights of plaintiff to construct telephone lines "along and upon any public road or highway" is contingent on the use of the location for highway purposes and that when the use of the property for highway purposes is abandoned that the franchise right of plaintiff is terminated by virtue of the provisions of § 7901. The Government further asserts that there were no restrictions or easements of record in the

quit claim deed from the state to the Government reserving to plaintiff any right or interest, by way of easement or otherwise, since there was no easement of record or other reservation upon which plaintiff may rely. In short, it is the Government's position that plaintiff's franchise rights to the use of property for its facilities in this case is dependent entirely on the use of the property by the state for highway purposes.

The right of the state to relocate a highway is provided for in § 71 of the California Street and Highway Code.

Neither party here involved has cited authority which might be said to be "on all fours" with the situation in the case at bar, resulting in the necessity to consider matters which may by analogy throw light on our problem. The Supreme Court of California in County of Los Angeles v. Southern California Telephone Company, 32 Cal.2d 378, 196 P.2d 773 (1948), considered the legal effect of then § 536, Civil Code, which has been re-enacted as § 7901 of the Public Utilities Code (1951). That case concerned the question of whether the re-enactment of § 536 of the Civil Code in 1905 was to offer grant of franchise to telephone as well as telegraph companies. At page 384, 196 P.2d at page 777, the court states:

> "Section 536 has been judicially construed by many decisions of this court, and it has been uniformly held that the statute is a continuing offer extended to telephone and telegraph companies to use the highways, which offer when accepted by the construction and maintenance of lines constitutes a binding contract based on adequate consideration, and that the vested right established thereby cannot be impaired by subsequent acts of the Legislature."
> Citing numerous cases.

This interpretation does not, however, state, nor in the opinion of this court may it be inferred therefrom, that the franchise right of the utility will remain over the property involved when it is abandoned by the state for highway purposes and no longer used therefor. At pages 387–388, 196 P.2d at page 779, the court observes:

> "A franchise such as is authorized by section 536 is not an absolute grant in fee or an appropriation of money, but is merely a limited right to use the highways and only to the extent necessary for the furnishing of services to the public. Also, the privilege must be exercised 'in such manner and at such points as not to incommode the public use of the road or highway.' (Civ.Code, § 536.) It is obvious that the right acquired by the company is of less substance than the transfers involved in the cited cases which condemn appropriations of money and grants in fee."

It is also to be noted that the California Supreme Court, at page 384, 196 P.2d at page 777, of its opinion, says:

> "The grant under section 536 *must be construed in favor of the state.* (Civ.Code, § 1069.)" (Emphasis ours.)

§§ 956.8, 957, 958, and 959 of the California Street and Highway Code refer to county highways and the abandonment thereof. § 959.1 states, in part:

> "In any proceeding for the abandonment of any county highway or part thereof, the board may in its order reserve and except from the abandonment the easement and right at any time or from time to time * * * to construct, maintain, operate, replace * * * conduits, cables, wires, poles * * * for the operation of * * * telephone lines * * * upon and over the highway or part thereof proposed to be abandoned."

Section 960 provides, in part:

> "Upon the making of such order of abandonment, the public easement, if the county owns only an easement, in the highway or part abandoned, ceases except to the extent reserved in the order of abandonment, and the title to the land

previously subject thereto reverts to the respective owners thereof *free from the public easement,* except to the extent reserved in the order of abandonment. * * *" (Emphasis ours.)

■ By analogy, it appears reasonable to conclude, in applying a strict construction to § 7901 in favor of the state, that since no reservation or easement was reserved in the abandonment of the old highway in the case at bar (resolution of July 26, 1961 and quit claim deed from the State of California to the United States on August 18, 1961) for the benefit of plaintiff, in the circumstances the Government took the land free from the franchise rights of plaintiff in the nature of an easement which plaintiff enjoyed during the time the property involved was being used for highway purposes.

The Attorney General of the State of California rendered an opinion requested by the State Director of Finance " * * * on the question whether the franchise granted telephone and telegraph companies by § 7901 of the Public Utilities Code extends to certain lands occupied by the San Diego State College." Vol. 28, Opinions of Attorney General, California, p. 215 (Oct. 17, 1956.). The Attorney General concluded that the franchise to public utilities under said § 7901 did not extend to lands occupied by the State College "since the statute does not separately grant franchises to State-owned land other than public roads, highways and waterways and such grant should not be implied." (p. 215 of the opinion.) After discussing the meaning of "lands within the state" as used in § 7901, the Attorney General, at page 221 of his opinion, observes:

"We have thoroughly examined the question and have concluded that the franchise under section 7901 of the Public Utilities Code does not extend to land owned by the State or its instrumentalities and being used for a so-called governmental purpose. In so doing, we disapprove our recent advice given to various State agencies and officials as noted above."

The reasons given for disapproving his "recent advice" are stated on pages 221 and 222 of the opinion, in substance, as follows:

"1. * * * the grant under section 7901 of the Public Utilities Code, in particular, must be construed in favor of the State under section 1069 of the Civil Code. (Citing cases.) * * *

"2. Public roads and public highways are specifically set forth in section 7901 of the Public Utilities Code as being subject to use under the franchise. Other lands or waters belonging to the State are not specifically mentioned as being subject to the franchise contrary to the statements in our recent letters above referred to. * * *

"Construing section 7901 in favor of the State and applying the presumption that a general grant in a statute does not apply to land being held or used for a governmental purpose, it necessarily follows that land of a State college is not subject to use without monetary compensation by a telephone company in the exercise of a supposed franchise under section 7901."

In conclusion, it is stated in the opinion at pages 224–225:

"For the foregoing reasons, we affirm our previous formal opinions to the effect that the franchise given telephone and telegraph companies by section 7901 of the Public Utilities Code does not entitle them to use State-owned land presently held by the State for government purposes where such governmental use is other than for road, highway or public waterway purposes."

■ Referring to the second issue set forth above, plaintiff urges, in further support of its claim, that the defendant is bound under an implied contract to pay the cost of moving the poles in ques-

tion because plaintiff moved them on defendant's request and when the poles were still along or upon a highway. Plaintiff says that considering for the purpose of argument that it was obligated to move the poles at its expense after the old highway was abandoned, the fact it moved them at defendant's request and for defendant's benefit some eight or nine months before abandonment of the old highway makes defendant obligated to pay for the moving. The court concludes from the Agreed Statement of Facts, exhibits thereto, and exhibits to the pleadings that the plaintiff, for several months before it moved the poles in November, 1960, had full information that the old road was being relocated to enlarge the facilities of the Naval Missile Base and that the old road right of way was going to be deeded by the State of California to the defendant, United States, and that the State of California would not quit claim its interest in the old roadway until the relocation work was completed (Exhibit B to plaintiff's complaint, being letter received by plaintiff August 10, 1960).

It was stipulated by plaintiff at the time of oral argument that for the purposes of this case the state might be considered as the owner of the old roadway in fee simple, as was the contention of the defendant.

The Government's letter of August 10, 1960 (Exhibit B to plaintiff's complaint) was not an *order* to plaintiff to remove its poles, and it may be assumed, having in mind all the circumstances, plaintiff was not ordered to remove the poles in August, 1960, by reason of the fact there was no legal obligation to do so *at that time*. The Government, in its letter, referred to the question of whether the franchise rights enjoyed by public utilities in California were compensable, and the court concludes that it was the intention of the parties, when they agreed to the moving of the poles and the resolving of the matter of compensation at a later date, that the respective obligations were to be determined as of the time the relocation was completed. Both parties

knew that the old highway would not be quit claimed until after completion of the relocation work. The fact the Government *requested* the moving of the poles, rather than issuing a peremptory order therefor, indicated it knew it did not have a legal right to require the poles to be moved before the old highway was abandoned.

The grant of easement by the Government to the State of California (Exhibit C to Agreed Facts) re the property on which the road was relocated also clearly announces the fact that the state "upon completion of the relocation of State Sign Route 150, will execute a quit claim deed granting to the Government all right, title and interest held by the said grantee in the above described portion of State Sign Route 150; * * *."

It appears that at the time the parties were discussing the obligation of defraying the expenses of relocation of the poles in August and September, 1960, they did not have in mind the rights of the plaintiff as to its maintaining facilities on the old roadway while said roadway was still being used for highway purposes, but rather had in mind the perpetual right of plaintiff to maintain its poles on the old roadway after the relocation. The defendant did not question the right of plaintiff to occupy the property while it was being used for highway purposes and that was the reason it *requested* the removal before the relocation was completed, with settlement at a later date of the controversy as to who would be required to bear the expense of removal.

Plaintiff speaks of unjust enrichment on the part of the Government in that it moved its poles eight or nine months prior to the abandonment of the old road and at a time when it was not required to move them, and all to the benefit of the Government. It is true that the old road right of way was used for highway purposes and was not relocated, as stated by plaintiff, lines 10–12, page 9, of its reply brief, "until the resolution of the State authorizing the quit claim was passed in July of 1961 (Exhibit D

of the Agreed Statement of Facts)." It therefore follows that the defendant Government received no benefit of value from plaintiff's moving its poles in November of 1960 though it was not obligated as a matter of law to do so until July of 1961.

The court concludes that defendant, United States of America, is entitled to judgment that plaintiff take nothing by reason of its complaint and for costs. Counsel for defendant is requested to prepare proposed Findings of Fact, Conclusions of Law and Judgment on behalf of said defendant in accordance with the provisions of Rule 7, local Rules of this court, West's Ann.Code.

This opinion is not to be considered as a final judgment.