GROUP W CABLE, INC., Plaintiff,

v.

The CITY OF SANTA CRUZ, the County of Santa Cruz, Defendants.

No. C–84–7546–WWS.

United States District Court, N.D. California.

Feb. 10, 1988.

Harold R. Farrow, Farrow, Schildhause, Wilson & Rains, Oakland, Cal., Peter C. Smoot, J. Larson Jaenicke, Rintala, Smoot, Jaenicke & Brunswick, Los Angeles, Cal., for plaintiff.

William M. Marticorena, Philip D. Kohn, Heather A. Mahood, Rutan & Tucker, Costa Mesa, Cal., for City & County of Santa Cruz.

Rodney R. Atchison, City Atty., Neal R. Anderson, Asst. City Atty., Atchison, Anderson & Daly, Santa Cruz, Cal., for City of Santa Cruz.

Dwight L. Herr, County Counsel, Santa Cruz, Cal., for County of Santa Cruz.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

This is an action by plaintiff, Group W Cable, Inc. ("Group W") to enjoin defendants, the City and the County of Santa Cruz ("Santa Cruz") from terminating its cable television franchise in the Santa Cruz area. The Court has previously held that the First Amendment precludes Santa Cruz from enforcing requirements or taking other steps to interfere with Group W's cable operations or services in the Santa Cruz area. *Group W Cable, Inc. v. City of Santa Cruz, et al.,* 669 F.Supp. 954, 975–78 (N.D.Cal.1987). The Court further held, however, that the First Amendment does not bar Santa Cruz from charging a reasonable fee for the use of public easements or rights of way. *Id.* at 972–75. The Court directed the parties, in the event they were unable to agree on an appropriate fee, to submit appraisal reports setting forth the fair value of the easements and rights of way. *Id.* at 975.

The parties have advised that preparation of appraisal reports covering the 580 miles of cable plant is both impractical and inordinately expensive. Moreover, since none of the information customarily used

to value real property is available to fix the value of the right to use such easements and rights of way, any attempt to make an appraisal is likely to be an arbitrary exercise.

Accordingly, the Court asked the parties to brief the question of how a reasonable fee should be determined. Following receipt of memoranda, the Court furnished its proposed ruling to the parties for further comment. Those comments and all of the materials submitted by the parties have now been considered by the Court.

## FACTS

Group W's cable system consists of approximately 580 miles of cable television wiring. Approximately 480 miles of that wiring is located above ground, while 100 miles is located below ground. The 480 miles of above-ground wiring is primarily attached to electric or telephone utility poles. Group W pays an annual fee to those utilities for access to those poles. Group W's underground wiring is primarily located within trenches shared with the same utilities. The relevant utility poles and trenches are located, pursuant to either statutory or local franchises, on rights of way held by Santa Cruz. A very small percentage of Group W's cable wiring, estimated to be less than five percent, is located on property or easements not owned by Santa Cruz, and this opinion does not address the issue of compensation for the use of such areas.

## DISCUSSION

Group W contends that Santa Cruz has no right to charge it for locating its wires on utility rights-of-way since it is only sharing the rights of the utilities to transmit power or signals over those rights of way. It rests its argument on the decisions in *Salvaty v. Falcon Cable Television,* 165 Cal.App.3d 798, 212 Cal.Rptr. 31 (1985), and *Witteman v. Jack Barry Cable T.V.,* 192 Cal.App.3d 1619, 228 Cal.Rptr. 584 (1986).

That reliance is misplaced. *Salvaty* held that a cable company did not have to obtain the property owner's consent to install its equipment on telephone poles located on

the telephone company's easement because "the cable equipment was within the scope of the easement which the telephone company apportioned to the cable company." *Id.,* 212 Cal.Rptr. at 32. In that case, the telephone company's predecessor had reserved to itself "an easement over ... the premises ... for the construction ... of a pole line for the stringing of telephone and electric light and power wires...." *Id.,* 212 Cal.Rptr. at 32. The court held that cable television equipment was within the scope of the easement and the telephone company could therefore apportion the easement to the cable company. *Witteman,* following *Salvaty,* is to the same effect.

■ Those cases are not apposite, however, because Santa Cruz has not granted easements or other property interests to the utilities. The utilities maintain their poles and trenches on Santa Cruz's property pursuant to franchises, granted by ordinance or state statute. The franchises confer on the utilities only the privilege of using the underlying land to provide specified utility services. Santa Cruz City Ords. NS–226, 227; Santa Cruz County Ords. 469, 470. Nor does California Public Utilities Code § 7901 grant any interest in the underlying easements or rights of way, which remain the property of Santa Cruz. *See* Cal.Pub.Util.Code § 7901; *Pacific Telephone & Telegraph Co. v. Redevelopment Agency of the City of Redlands,* 75 Cal. App.3d 957, 142 Cal.Rptr. 584 (1977); *General Telephone Co. of California v. United States,* 216 F.Supp. 388 (S.D.Cal.1963). Accordingly, control of the use of those easements and rights of way remains in Santa Cruz.

The fact that Group W shares the use of the utilities' poles and pays them a fee for that use does not give it the right to remain on Santa Cruz's property. Such payments do not preempt Santa Cruz from charging for the grant of independent rights to use its easements and rights of way.[1]

■ Group W must therefore obtain the consent of Santa Cruz to use the latter's easements and rights of way. The primary issue before the Court concerns the limits

1. Even if telephone companies may make inci-

dental use of their own wires to transmit tele-

imposed by the First Amendment on Santa Cruz's right to charge Group W for the use of those public easements and rights of way. The Court has previously held that Santa Cruz cannot prevent Group W from continuing to exercise its rights under the First Amendment. It follows that Santa Cruz cannot accomplish indirectly by a user charge for easements and rights of way what it is prohibited from doing directly by Requests for Proposals or similar restrictive procedures.

■ On the other hand, Santa Cruz may adopt "reasonable time, place, and manner regulations" governing the use of public facilities. *See Preferred Communications v. City of Los Angeles*, 754 F.2d 1396, 1409 (9th Cir.1985), *aff'd on narrower grounds*, 476 U.S. 488, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986). Content-neutral, nondiscriminatory fees for the use of public property for the exercise of First Amendment rights are a permissible form of regulation. *Gannett Satellite Information Network, Inc. v. Metropolitan Transportation Authority*, 745 F.2d 767, 773 (2d Cir.1984).

■ In *Gannett*, the court held that "the First Amendment does not guarantee a right to the least expensive means of expression" where alternative means of communication are available. *Id.* at 774. But here, no claim is made that Group W currently has feasible alternatives to using Santa Cruz's easements and rights of way for distributing its cable signals.[2] Because, under *Preferred Communications*, those easements and rights of way must be regarded as a limited public forum, regulations governing their use, including fees, must be reasonable. *See generally Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983).

What constitutes a reasonable fee under the circumstances presents a more difficult question.[3] There appear to be no meaningful indicia of fair market value: there is no market in rights to use public easements and rights of way, and Group W has no reasonably interchangeable alternative forms of access whose cost might set a cap on the fee.

■ The best available approximation of the fair market value of the use of the easements to provide cable service is the value to a cable operator of access to the Santa Cruz market. Cable operators will presumably pay a fee for use of the easements and rights of way that will enable them to serve the Santa Cruz market while earning a reasonable return on their investment. The First Amendment does not necessarily preclude allowing the marketplace to control the allocation of communication resources. *See Gannett*, 745 F.2d at 775 n. 4. In theory, this leaves Santa Cruz free to fix a fee higher than Group W is willing to pay, but, in reality, Santa Cruz is restrained in two ways: (1) California Government Code § 53066 and the Cable Communications Policy Act, 47 U.S.C. § 542(b), limit any fee to not more than five percent of the gross revenue derived from cable operations in Santa Cruz, and, (2) Santa Cruz's interest in gaining cable service for its residents will also limit the fee it charges Group W, since it is not free to charge any other operator either less or more. Within the range from zero to five percent, Santa Cruz must set a content-neutral, non-discriminatory fee; it cannot use the fee as a vehicle for selecting a preferred operator. Any fee set must be the same for any cable operator regardless of the nature of the service offered or any other consideration or distinction. *See Preferred Communications*, 754 F.2d at 1409.

■ There is the further question whether Santa Cruz should be entitled to charge Group W an administrative fee to cover the

---

vision signals, an issue not reached here, they do not automatically have the right to apportion this statutory privilege to others.

**2.** Santa Cruz notes that there is nothing to prevent Group W from negotiating private easements with property owners but it acknowledges that it would be disruptive and not cost effective. Hence it cannot be considered a feasible alternative.

**3.** The cases cited by Group W for the proposition that the proper measure is the diminution-in-value of the property as a result of the additional use are not apposite. That measure applies to condemnation of private property for public use. Different policy considerations govern charges for private use of public property.

costs of the clerical and administrative services required to administer Group W's use of public facilities. Group W has heretofore paid an application fee of $3,000, which Santa Cruz agrees adequately compensates it for the limited services required under this Court's ruling. There is no evidence that Santa Cruz charges administrative fees to other public service corporations utilizing its property. The fee Santa Cruz will collect for the use of its easements and rights of way will presumptively be adequate to reimburse it for any expenses arising out of their use by Group W.

### *Motion for Rehearing and Amendment of Judgment*

#### A. *Transfer of Group W Ownership*

 Santa Cruz contends that Group W's prayer for injunctive relief should be dismissed as moot. This contention is based on evidence that the capital stock of Group W Cable, Inc. was sold by Westinghouse Electric Corp. and Westinghouse Broadcasting Company, Inc., to five cable companies. Group W's name was changed and its assets distributed to the CAT Partnership. CAT Partnership continues to conduct the Santa Cruz cable operation without change relevant to its standing as a First Amendment speaker. There is nothing before the Court to suggest that the circumstances that gave rise to this action and the need for an injunction—Santa Cruz's attempt to terminate the operation of the Group W cable system—have ceased to exist. Nor is there anything to indicate that the action was not properly pursued in the name of Group W, although it may be appropriate to acknowledge the change in name and form of organization by an amendment of the pleadings.

#### B. *Use of the Word "Franchise" in the Judgment*

Santa Cruz also contends that the reference to "franchise" in paragraphs 3 and 4 of the judgment should be deleted. The most charitable interpretation of this motion (see particularly Reply of November 25, p. 10, lines 5–9) is that counsel failed to read the judgment in its entirety before composing their papers or selectively chose the parts that supported their argument. The long and the short of it is that the Court, in paragraph 3 of the judgment, for convenience defined "the franchise" as including "the cable television franchise *or system* operated by plaintiff in the City of Santa Cruz and the County of Santa Cruz." (Emphasis added.) If counsel will simply focus their attention on the entire document and read it for what it says, its meaning will be clear and compliance with it simple.

The motion for rehearing and amendment of judgment is denied.

Santa Cruz's application to strike an item from Group W's bill of costs is unopposed and is accordingly granted.

### ORDER

This Order is made pursuant to the power reserved in paragraph 7 of the judgment heretofore filed and is to be read in *pari materia* with paragraph 4(b) and (c) of that judgment.

IT IS SO ORDERED.