# CITY OF LOS ANGELES et al. v. PREFERRED COMMUNICATIONS, INC.

No. 85–390.   Argued April 29, 1986—Decided June 2, 1986

REHNQUIST, J., delivered the opinion for a unanimous Court. BLACK-MUN, J., filed a concurring opinion, in which MARSHALL and O'CONNOR, JJ., joined, *post*, p. 496.

*Edward J. Perez* argued the cause for petitioners. With him on the briefs were *Thomas Bonaventura, John Haggerty, John H. Garvey,* and *Nicholas P. Miller.*

*Harold R. Farrow* argued the cause for respondent. With him on the brief were *Sol Schildhause* and *Siegfried Hesse.**

*Briefs of *amici curiae* urging reversal were filed for the State of Connecticut by *Joseph I. Lieberman,* Attorney General, *Clarine N. Riddle,* Deputy Attorney General, and *William B. Gundling,* Assistant Attorney General; for the city of Brookfield, Wisconsin, by *Harold H. Fuhrman;* for the city of New York by *Paul S. Ryerson, Patrick J. Grant,* and *Hadley W. Gold;* for the city of Palo Alto, California, et al. by *Michael A. Small, Jerome B. Falk, Jr., Steven L. Mayer, Steven F. Nord, Donald S. Greenberg, Mary Jo Levinger, John Sanford Todd, P. Lawrence Klose, Carter J. Stroud, John W. Witt, R. R. Campagna, Jack White, R. K. Fox, Gordon Phillips, Victor Kaleta, Edward J. Cooper, George Agnost, Richard Terzian, J. Robert Flandrick, Roger Picquet, Stanley E. Remelmeyer, James Jackson,* and *Robin Faisant;* for Mountain States Telephone and Telegraph Co. et al. by *Debra T. Yarbrough, Robert W. Barker,* and *L. Andrew Tollin;* for the National Association of Broadcasters by *Michael S. Horne* and *Michael D. Berg;* for the National Federation of Local Cable Programmers et al. by *James N. Horwood, Alan J. Roth, Joseph Van Eaton,* and *Donald Weightman;* for the National Institute of Municipal Law Officers by *Roy D. Bates, William I. Thornton, Jr., John W. Witt, Roger F. Cutler, George Agnost, J. Lamar Shelley, Robert J. Alfton, James K. Baker, Frank B. Gummey III, James D. Montgomery, Clifford D. Pierce, Jr., William H. Taube,* and *Charles S. Rhyne;* for the National League of Cities et al. by *Benna Ruth Solomon* and *Jeffrey H. Howard;* for the Office of Communication of United Church of Christ et al. by *Henry Geller* and *Andrew J. Schwartzman;* and for Wisconsin Bell, Inc., by *Robert A. Christensen, Joan F. Kessler,* and *Floyd S. Keene.*

Briefs of *amici curiae* urging affirmance were filed for the United States et al. by *Solicitor General Fried, Assistant Attorney General Ginsburg,* and *Jack D. Smith;* for the American Cable Publishers Institute, Inc., by *Peter C. Smoot;* for Guam Cable TV by *Richard L. Brown;* for the Mid-America Legal Foundation by *John M. Cannon, Susan W. Wanat,* and *Ann Plunkett Sheldon;* for the Motion Picture Association of America, Inc., by *Richard M. Cooper* and *Walter J. Josiah, Jr.;* for the National Cable Television Association, Inc., by *Brenda L. Fox, Michael S. Schooler,* and *H. Bartow Farr III;* for the National Satellite Cable Association by *Mark J. Tauber* and *Deborah C. Costlow;* for Nor-West Cable Communications Partnership et al. by *David Rosenweig* and *Jerome D. Krings;* for Space, the Satellite Television Industry Association, Inc., by

JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent Preferred Communications, Inc., sued petitioners City of Los Angeles (City) and the Department of Water and Power (DWP) in the United States District Court for the Central District of California. The complaint alleged a violation of respondent's rights under the First and Fourteenth Amendments, and under §§ 1 and 2 of the Sherman Act, by reason of the City's refusal to grant respondent a cable television franchise and of DWP's refusal to grant access to DWP's poles or underground conduits used for power lines. The District Court dismissed the complaint for failure to state a claim upon which relief could be granted. See Fed. Rule Civ. Proc. 12(b)(6). The Court of Appeals for the Ninth Circuit affirmed with respect to the Sherman Act, but reversed as to the First Amendment claim. 754 F. 2d 1396 (1985). We granted certiorari with respect to the latter issue, 474 U. S. 979 (1985).

Respondent's complaint against the City and DWP alleged, *inter alia*, the following facts: Respondent asked Pacific Telephone and Telegraph (PT&T) and DWP for permission to lease space on their utility poles in order to provide cable television service in the south central area of Los Angeles. App. 6a. These utilities responded that they would not lease the space unless respondent first obtained a cable television franchise from the City. *Ibid.* Respondent asked the City for a franchise, but the City refused to grant it one, stating that respondent had failed to participate in an auction that was to award a single franchise in the area. *Id.*, at 6a–7a.[1]

*Richard L. Brown;* and for Tele-Communications, Inc., et al. by *Stuart W. Gold, Robert D. Joffe,* and *Henry J. Gerken.*

Briefs of *amici curiae* were filed for the American Civil Liberties Union et al. by *Charles S. Sims, Burt Neuborne,* and *Paul Hoffman;* for Best View Cablevision, Inc., by *Lawrence S. Bader, Paul R. Grand,* and *Diana Parker;* for UNDA-USA et al. by *Robert L. Stern* and *Patrick F. Geary;* and for Nicholas W. Carlin, *pro se.*

[1] California authorizes municipalities to limit the number of cable television operators in an area by means of a "franchise or license" system, and

The complaint further alleged that cable operators are First Amendment speakers, *id.*, at 3a, that there is sufficient excess physical capacity and economic demand in the south central area of Los Angeles to accommodate more than one cable company, *id.*, at 4a, and that the City's auction process allowed it to discriminate among franchise applicants based on which one it deemed to be the "best." *Id.*, at 6a. Based on these and other factual allegations, the complaint alleged that the City and DWP had violated the Free Speech Clause of the First Amendment, as made applicable to the States by the Fourteenth Amendment, §§ 1 and 2 of the Sherman Act,

to prescribe "rules and regulations" to protect customers of such operators. See Cal. Gov't Code Ann. § 53066 (West Supp. 1986). Congress has recently endorsed such franchise systems. See Cable Communications Policy Act of 1984, Pub. L. 98–549, 98 Stat. 2779. Pursuant to the authority granted by the State, the City has adopted a provision forbidding the construction or operation of a cable television system within city limits unless a franchise is first obtained. See Los Angeles, Cal., Admin. Code, Art. 13, § 13.62(a) (1979). A city ordinance provides that franchises are to be allotted by auction to the bidder offering "the highest percentage of gross annual receipts" derived from the franchise and "such other compensation or consideration . . . as may be prescribed by the Council in the advertisement for bids and notice of sale." See Los Angeles Ordinance 58,200, § 5.2 (1927).

In October 1982, the City published an advertisement soliciting bids for a cable television franchise in the south central area of Los Angeles. The advertisement indicated that only one franchise would be awarded, and it established a deadline for the submission of bids. App. 91a. It also set forth certain nonfinancial criteria to be considered in the selection process, including the degree of local participation in management or ownership reflecting the ethnic and economic diversity of the franchise area, the capacity to provide 52 channels and two-way communication, the willingness to set aside channels for various public purposes and to provide public access facilities, the willingness to develop other services in the public interest, the criminal and civil enforcement record of the company and its principals, the degree of business experience in cable television or other activities, and the willingness to engage in creative and aggressive affirmative action. *Id.*, at 98a, 101a–102a, 105a, 108a–109a. Respondent did not submit a bid in response to this solicitation, and the franchise was eventually awarded to another cable operator.

the California Constitution, and certain provisions of state law. *Id.*, at 11a–19a.

The City did not deny that there was excess physical capacity to accommodate more than one cable television system. But it argued that the physical scarcity of available space on public utility structures, the limits of economic demand for the cable medium, and the practical and esthetic disruptive effect that installing and maintaining a cable system has on the public right-of-way justified its decision to restrict access to its facilities to a single cable television company. 754 F. 2d, at 1401.

The District Court dismissed the free speech claim without leave to amend for failure to state a claim upon which relief could be granted. See Fed. Rule Civ. Proc. 12(b)(6). It also dismissed the antitrust claims, reasoning that petitioners were immune from antitrust liability under the state-action doctrine of *Parker* v. *Brown,* 317 U. S. 341 (1963). Finally, it declined to exercise pendent jurisdiction over the remaining state claims.

The Court of Appeals for the Ninth Circuit affirmed in part and reversed in part. 754 F. 2d 1396 (1985). It upheld the conclusion that petitioners were immune from liability under the federal antitrust laws. *Id.*, at 1411–1415. But it reversed the District Court's dismissal of the First Amendment claim, and remanded for further proceedings. *Id.*, at 1401–1411. It held that, taking the allegations in the complaint as true, *id.*, at 1399, the City violated the First Amendment by refusing to issue a franchise to more than one cable television company when there was sufficient excess physical and economic capacity to accommodate more than one. *Id.*, at 1401–1405, 1411. The Court of Appeals expressed the view that the facts alleged in the complaint brought respondent into the ambit of cases such as *Miami Herald Publishing Co.* v. *Tornillo,* 418 U. S. 241 (1974), rather than of cases such as *Red Lion Broadcasting Co.* v. *FCC,* 395 U. S. 367 (1969),

and *Members of City Council* v. *Taxpayers for Vincent*, 466 U. S. 789 (1984).  754 F. 2d, at 1403–1411.

We agree with the Court of Appeals that respondent's complaint should not have been dismissed, and we therefore affirm the judgment of that court; but we do so on a narrower ground than the one taken by it.  The well-pleaded facts in the complaint include allegations of sufficient excess physical capacity and economic demand for cable television operators in the area which respondent sought to serve.[2]  The City, while admitting the existence of excess physical capacity on the utility poles, the rights-of-way, and the like, justifies the limit on franchises in terms of minimizing the demand that cable systems make for the use of public property.  The City characterizes these uses as the stringing of "nearly 700 miles of hanging and buried wire and other appliances necessary for the operation of its system."  Brief for Petitioners 12.  The City also characterizes them as "a permanent visual blight," *ibid.*, and adds that the process of installation and repair of such a system in effect subjects city facilities designed for other purposes to a servitude which will cause traffic delays and hazards and esthetic unsightliness.  Respondent in its turn replies that the City does not "provide anything more than speculations and assumptions," and that the City's "legitimate concerns are easily satisfied without the need to limit the right to speak to a single speaker." Brief for Respondent 9.

We of course take the well-pleaded allegations of the complaint as true for the purpose of a motion to dismiss, see, *e. g.*, *Kugler* v. *Helfant*, 421 U. S. 117, 125–126, n. 5 (1975). Ordinarily such a motion frames a legal issue such as the one which the Court of Appeals undertook to decide in this case.

---

[2] They also include allegations that the City imposes numerous other conditions upon a successful applicant for a franchise.  It is claimed that, entirely apart from the limitation of franchises to one in each area, these conditions violate respondent's First Amendment rights.  The Court of Appeals did not reach these contentions, and neither do we.

But this case is different from a case between private litigants for two reasons: first, it is an action of a municipal corporation taken pursuant to a city ordinance that is challenged here, and, second, the ordinance is challenged on colorable First Amendment grounds. The City has adduced essentially factual arguments to justify the restrictions on cable franchising imposed by its ordinance, but the factual assertions of the City are disputed at least in part by respondent. We are unwilling to decide the legal questions posed by the parties without a more thoroughly developed record of proceedings in which the parties have an opportunity to prove those disputed factual assertions upon which they rely.

We do think that the activities in which respondent allegedly seeks to engage plainly implicate First Amendment interests. Respondent alleges:

> "The business of cable television, like that of newspapers and magazines, is to provide its subscribers with a mixture of news, information and entertainment. As do newspapers, cable television companies use a portion of their available space to reprint (or retransmit) the communications of others, while at the same time providing some original content." App. 3a.

Thus, through original programming or by exercising editorial discretion over which stations or programs to include in its repertoire, respondent seeks to communicate messages on a wide variety of topics and in a wide variety of formats. We recently noted that cable operators exercise "a significant amount of editorial discretion regarding what their programming will include." *FCC* v. *Midwest Video Corp.*, 440 U. S. 689, 707 (1979). Cable television partakes of some of the aspects of speech and the communication of ideas as do the traditional enterprises of newspaper and book publishers, public speakers, and pamphleteers. Respondent's proposed activities would seem to implicate First Amendment interests as do the activities of wireless broadcasters, which were found

to fall within the ambit of the First Amendment in *Red Lion Broadcasting Co.* v. *FCC, supra,* at 386, even though the free speech aspects of the wireless broadcasters' claim were found to be outweighed by the Government interests in regulating by reason of the scarcity of available frequencies.

Of course, the conclusion that respondent's factual allegations implicate protected speech does not end the inquiry. "Even protected speech is not equally permissible in all places and at all times." *Cornelius* v. *NAACP Legal Defense & Educational Fund, Inc.,* 473 U. S. 788, 799 (1985). Moreover, where speech and conduct are joined in a single course of action, the First Amendment values must be balanced against competing societal interests. See, *e. g., Members of City Council* v. *Taxpayers for Vincent, supra,* at 805–807; *United States* v. *O'Brien,* 391 U. S. 367, 376–377 (1968). We do not think, however, that it is desirable to express any more detailed views on the proper resolution of the First Amendment question raised by respondent's complaint and the City's responses to it without a fuller development of the disputed issues in the case. We think that we may know more than we know now about how the constitutional issues should be resolved when we know more about the present uses of the public utility poles and rights-of-way and how respondent proposes to install and maintain its facilities on them.

The City claims that no such trial of the issues is required, because the City need not "generate a legislative record" in enacting ordinances which would grant one franchise for each area of the City. Brief for Petitioners 44. "Whether a limitation on the number of franchises . . . is 'reasonable,'" the City continues, "thus cannot turn on a review of historical facts." *Id.,* at 45. The City supports its contention in this regard by citation to cases such as *United States Railroad Retirement Board* v. *Fritz,* 449 U. S. 166, 179 (1980), and *Schweiker* v. *Wilson,* 450 U. S. 221, 236–237 (1981). Brief for Petitioners 45, n. 52.

The flaw in the City's argument is that both *Fritz* and *Wilson* involved Fifth Amendment equal protection challenges to legislation, rather than challenges under the First Amendment. Where a law is subjected to a colorable First Amendment challenge, the rule of rationality which will sustain legislation against other constitutional challenges typically does not have the same controlling force. But cf. *Ohralik* v. *Ohio State Bar Assn.*, 436 U. S. 447, 459 (1978). This Court "may not simply assume that the ordinance will always advance the asserted state interests sufficiently to justify its abridgment of expressive activity." *Taxpayers for Vincent*, 466 U. S., at 803, n. 22; *Landmark Communications, Inc* v. *Virginia*, 435 U. S. 829, 843–844 (1978).

We affirm the judgment of the Court of Appeals reversing the dismissal of respondent's complaint by the District Court, and remand the case to the District Court so that petitioners may file an answer and the material factual disputes between the parties may be resolved.

*It is so ordered.*

JUSTICE BLACKMUN, with whom JUSTICE MARSHALL and JUSTICE O'CONNOR join, concurring.

I join the Court's opinion on the understanding that it leaves open the question of the proper standard for judging First Amendment challenges to a municipality's restriction of access to cable facilities. Different communications media are treated differently for First Amendment purposes. Compare, *e. g.*, *Miami Herald Publishing Co.* v. *Tornillo*, 418 U. S. 241 (1974), with *FCC* v. *League of Women Voters of California*, 468 U. S. 364, 380 (1984). In assessing First Amendment claims concerning cable access, the Court must determine whether the characteristics of cable television make it sufficiently analogous to another medium to warrant application of an already existing standard or whether those characteristics require a new analysis. As this case arises out of a motion to dismiss, we lack factual information about the nature of cable television. Recognizing these consider-

ations, *ante,* at 493–494, the Court does not attempt to choose or justify any particular standard. It simply concludes that, in challenging Los Angeles' policy of exclusivity in cable franchising, respondent alleges a cognizable First Amendment claim.