**CITY COMMUNICATIONS, INC., a Michigan corporation, Plaintiff,**

v.

**CITY OF DETROIT, a Municipal corporation; Barden Cablevision of Detroit, Inc., a Michigan corporation; and MacLean–Hunter Cable TV, Inc., a Canadian corporation, Defendants.**

No. 86–CV–71087–DT.

United States District Court, E.D. Michigan, S.D.

June 2, 1988.

Schnader, Harrison, Segal & Lewis by Peter S. Greenberg, Christine C. Levin, Philadelphia, Pa., Butzel, Long, Gust, Klein & Van Zile by William M. Saxton, Keefe A. Brooks, Detroit, Mich., for plaintiff; Hyde & Mercer by William R. Hyde, Jr., Washington, D.C., of counsel.

Dickinson, Wright, Moon, Van Dusen & Freeman by W. Gerald Warren, Detroit, Mich., for Barden Cablevision of Detroit, Inc.

Honigman, Miller, Schwartz & Cohn by I.W. Winsten, William D. Sargent, Detroit, Mich., for City of Detroit.

William J. DeBiasi, Taylor, Mich., for MacLean–Hunter Cable TV, Inc.

## MEMORANDUM OPINION

GILMORE, District Judge.

This matter is before the Court upon defendants' motion for summary judgment on the First Amendment claim, and plaintiff's motion for summary judgment against the City of Detroit on the First Amendment claim. The suit challenges the legality of the City of Detroit's award to defendant Barden Cablevision of an exclusive cable television franchise for the City of Detroit.

In a previous opinion, this Court provided a thorough statement of the facts.[1] Briefly, plaintiff is one of two unsuccessful bidders for the contract to install cable television in the City of Detroit. Plaintiff, City Communications, Inc. (CCI), filed a six count complaint alleging, *inter alia,* a First Amendment violation by defendant City of Detroit (City) in awarding only one citywide cable TV franchise.

The selection process required three bidders to submit applications in response to the request for proposals. Each bid was accompanied by a payment of $10,000. According to CCI, their application met the requirements set forth in the request for proposals. In July of 1983, the City awarded the franchise to defendant Barden Cablevision. The franchise was to commence on August 31, 1983, and continue until August 31, 1998, unless terminated or forfeited by the City. The franchise was conditioned upon Barden demonstrating an unconditional financial commitment for constructing and operating the cable system, and executing a franchise agreement with the City on or before August 31, 1984.

On July 26, 1983, CCI filed suit against the City and Barden in Wayne County Circuit Court seeking to block the award of the franchise to Barden, alleging breach of contract and promissory estoppel. Judge Maureen P. Reilly dismissed the action in November 1985 on grounds that, under Michigan law, a disappointed bidder lacked standing to challenge the award of a public contract. *City Communications, Inc. v. City of Detroit,* No. 83–3229792–CZ, Order of Dismissal (Wayne Circuit Court Nov. 2, 1983).

In August of 1984, Barden notified the City that it could not meet the August 31 deadline for executing the cable franchise. In response, the City granted Barden additional time to firm up its financing.

Barden also requested additional significant modifications in 1985, and in May and December of that year the City agreed to allow Barden to make such modifications.[2]

CCI brought suit, and on May 19, 1986, this Court heard defendants' motion to dismiss. No ruling was made on the First Amendment claim because it was not specifically addressed in the motion. *City Communications, Inc. v. City of Detroit,* 650 F.Supp. 1570, 1581 (E.D.Mich.1987). The defendants did argue, however, that the First Amendment claim, as well as other claims, were barred by the doctrine of res judicata due to Judge Reilly's order from the state court. This Court rejected that argument, stating that this case and the previous case in state court rested on different sets of facts "since many of the plaintiff's allegations of wrongdoing concern events that occurred long after the state court action was completed." 650 F.Supp. at 1580. On May 28, 1987, this Court denied motions for reconsideration involving issues from the May 19, 1986, hearing before this Court.

■ Both the defendants and CCI move for summary judgment on the First Amendment claim.[3] As part of its argument, the City asserts that the case should be dismissed without prejudice on standing and/or ripeness grounds, or, in the alternative, the case should be dismissed with

---

1. *See City Communications v. City of Detroit,* 650 F.Supp. 1570, 1572–73 (E.D.Mich.1987).

2. For a description of the modifications, see 650 F.Supp. at 1573.

3. The City also moved for dismissal based upon CCI's failure to comply with discovery. During oral argument, this Court denied the motion. However, this Court ordered CCI to respond to the discovery request within 60 days. CCI did so on March 15, 1988.

prejudice based upon res judicata.[4] Because plaintiff lacks standing and the First Amendment issue is not presently ripe for adjudication, the Court will deny both motions without prejudice.

The City argues that, since CCI has not applied to be a second franchisee, and has not stated whether it will ever build a second cable system, CCI's claim "is premature and hypothetical and not ripe for resolution." The City argues that, before CCI can bring a claim, it must make a genuine request to the City for the right to construct a second system, and its request must be turned down. Since this has not occurred, the City argues that CCI's claim is not ripe, and must be dismissed. *See Hodel v. Virginia Surface Mining and Reclamation Association, Inc.,* 452 U.S. 264, 294–97, 101 S.Ct. 2352, 2369–71, 69 L.Ed.2d 1 (1981); *United Public Workers v. Mitchell,* 330 U.S. 75, 89–91, 67 S.Ct. 556, 564–65, 91 L.Ed. 754 (1947). *See also Greer v. Spock,* 424 U.S. 828, 840, 96 S.Ct. 1211, 1218, 47 L.Ed.2d 505 (1976) (Court held that denial based on a federal regulation prohibiting distribution of any writings without prior written approval, of access to military base to distribute literature, did not constitute justifiable controversy under the First Amendment because plaintiffs did not apply for the right to distribute literature).

For similar reasons, the City argues that CCI has no standing. In *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the Supreme Court stated that, in order to invoke a court's authority, a party must:

> Show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, ... and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision".

454 U.S. at 472, 102 S.Ct. at 758 (citations omitted).

Because CCI has never fully applied to be a second franchisee, the City argues that CCI has suffered no threatened or actual injury due to its "speculative inability" to obtain a second franchise. The City further asserts that, inasmuch as CCI has not determined whether it will actually construct a second system, it is not "likely" that CCI's claim will result in a "favorable decision." *See S & G News, Inc. v. City of Southgate,* 638 F.Supp. 1060, 1066 (E.D. Mich.1986), *aff'd,* 819 F.2d 1142 (6th Cir. 1987) (Adult bookseller had no standing to attack constitutionality of zoning ordinance since it had never applied for a special approval use; however, the Court did acknowledge "normally strict standing requirements are, in certain contexts, relaxed in cases involving the First Amendment.")

CCI responds by stating that, assuming a second application was necessary, as soon as there was a hint during discovery that it would consider a second cable franchise, CCI's counsel contacted the City to formally make such an application. *See* letter from Peter S. Greenberg to I.W. Winsten (Oct. 9, 1987) ("CCI is not at all adverse to proceeding in such a manner."). On Nov. 2, 1987, City's counsel acknowledged receipt of the letter. On Dec. 2, 1987, City's counsel responded by stating that, in order for the City to consider a second application, CCI would need to submit to the City a detailed description of the plan for a second cable system in Detroit.

In any event, CCI argues that a second application is not necessary. CCI asserts that its original 1982 proposal to obtain the cable TV franchise in Detroit, coupled with the briefs, documents and affidavits filed with CCI's motion, effectively provide the City with a second application. CCI argues that it has suffered injury as a result of the City's conduct, "and every day that Barden has an exclusive franchise is another day that CCI continues to suffer a violation of its rights." CCI asserts that to force it to expend money and time on an application, especially when it may not even be necessary, "would itself have an illegal chilling effect on First Amendment rights." *See*

---

**4.** The Court will not deal with the res judicata    issue in light of this opinion.

*Times Film Corp. v. City of Chicago*, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961).

Finally, CCI points out that in *Century Federal, Inc. v. City of Palo Alto*, 648 F.Supp. 1465 (N.D.Cal.1986), a cable TV operator successfully challenged the cable TV exclusive franchising procedures of three communities in California. The victorious plaintiff never filed any application, yet the Court granted plaintiff's motion for summary judgment. Here, notes CCI, CCI has already submitted an application, and has demonstrated that it is capable of providing cable service to Detroit. Hence, if the *Century Federal* plaintiff had standing, CCI asserts it also must have standing.

This Court recognizes that important First Amendment questions have been raised by these proceedings. The law regarding the First Amendment rights of cable TV operators is not clear, and the U.S. Supreme Court has addressed the question only in an introductory manner. See *City of Los Angeles v. Preferred Communications*, 476 U.S. 488, 106 S.Ct. 2034, 90 L.Ed.2d. 480 (1986). However, this Court will not, at the present time, consider the merits of the First Amendment argument. Because it appears from the record that a "ripe" justiciable controversy does not exist, or, in the alternative, that CCI presently lacks standing, this Court will dismiss without prejudice the First Amendment claim against the City.

The Supreme Court has implied that, as part of a First Amendment claim, a prospective cable franchisee must describe its plan to construct and operate its proposed second system. As the Court stated in *Preferred:*

> We think that we may know more than we know now about how the constitutional issues should be resolved when we know more about the present uses of the public utility poles and rights-of-way and how respondent proposes to install and maintain its facilities on them.

476 U.S. at 495, 106 S.Ct. at 2038, 90 L.Ed. 2d at 488. *See also Pacific West Cable Co. v. City of Sacramento*, 798 F.2d 353, 355 (9th Cir.1986) ("Nothing ... requires that a municipality open its doors to all cable tele-

vision comers, regardless of size, shape, quality, qualifications or threat to the ultimate capacity of the system.").

While CCI argues that its 1982 proposals and the documents and affidavits accompanying this motion provide this Court with enough information to grant CCI the right to construct a second cable TV franchise in the City of Detroit, this Court is not persuaded. All of the materials filed with this Court relate to CCI's 1982 application. At that time, CCI sought, as did Barden, an exclusive cable TV franchise. Hence, all of the documents pertaining to the 1981 proposal relate to the feasibility of an exclusive franchise, not a second franchise's capabilities.

To have a First Amendment Right *now*, there must be some kind of application, with detail, and an action by the City refusing the application. Until this occurs, the case is not ripe for adjudication. A complete record under *Preferred Communications, supra*, as interpreted by this Court, would include: (1) an application for a second franchise, accompanied by a feasibility study; (2) application and feasibility study filed with the cable commission, city council and mayor; and (3) a denial of the application.

In certain contexts, a litigant has standing to challenge the constitutionality of a statute on First Amendment grounds even though no personal injury is involved. For example, in overbreadth cases, the litigant challenges a statute on its face because, it is argued, while a narrowly drawn statute could constitutionally prohibit this activity, the challenged statute is overbroad and appears to include activity that is constitutionally protected. The actual litigant before the court is injured because the Court finds he "has a right to be prosecuted only under a statute that is narrowly drawn." Nowak, *Constitutional Law*, § 2.13(f)(3), at 191 (1986).

In most constitutional cases, however, a plaintiff must establish at a minimum a "personal stake" in the outcome. *See Valley Forge, supra*. Here, it appears that if CCI has standing it rests on very questionable grounds. CCI claims that it is injured

**164**

each and every day Barden remains the exclusive franchisee in Detroit. CCI's personal injury, however, if any, would be the deprivation of its First Amendment rights. This Court can make this determination only if a complete factual record exists.

Assuming that personal injury is apparent, and that its injury can be "traced" to the challenged exclusive franchising process, it is not clear whether CCI's injury "is likely to be redressed by a favorable decision." This also will remain unclear until the factual record is completely developed regarding CCI's full capability to provide cable TV to Detroit as a second franchisee.

Moreover, it appears that this case is not yet ripe for resolution. *See United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1946) ("A hypothetical threat is not enough.... Should the courts seek to expand their power so as to bring under their jurisdiction ill-defined controversies over constitutional issues, they would become the organ of political theories."). CCI asks this Court, effectively, to grant it a license to be a second cable operator in Detroit. The Court is not in the business of granting franchises. It is only capable of determining if First Amendment rights were violated by a denial of any rights to a cable TV franchise in Detroit. This can only be done when a complete factual record exists.

Because CCI has stated that it would not be adverse to proceeding in such a manner, and because the City has stated in its briefs, as well as in open court, that any second application filed by CCI would be given full and serious consideration, it appears that a "ripe" justiciable controversy does not now exist.

Thus, this Court dismisses the First Amendment claim without prejudice due to lack of ripeness and standing. An order consistent with this opinion may be presented to the Court.