Karen **CHRISTY**, Plaintiff,

v.

**CITY OF LANSING**, Defendant.

No. L88–61 CA.

United States District Court,
W.D. Michigan, S.D.

Aug. 30, 1988.

---

**5.** Counts II, V and VI of plaintiffs' complaint were dismissed by stipulation of the parties.

Michael Null, Chicago, Ill., for plaintiff.

James E. Tamm, Plunkett & Cooney, Detroit, Mich., for defendant.

## OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

This case presents a challenge to the constitutionality of the occupancy certificate provisions of the City of Lansing Building Code. On May 24, 1988, the Court dismissed the complaint in its entirety upon finding it to be patently frivolous and totally devoid of merit. In the wake of this ruling followed defendant's motion for imposition of sanctions under Fed.R.Civ.P. 11. Having given due consideration to the briefs and oral arguments of counsel, presented on August 10, 1988, the Court now adjudicates the motion.

### I

Rule 11 [1] provides for the imposition of an appropriate sanction where the signa-

---

1. The full text of Rule 11 provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other

ture appearing on a legal paper filed in the court is found to not represent what it is required to represent, i.e., certification that the contents of the paper are, after reasonable inquiry, (a) believed to be well-grounded in fact; (b) believed to be warranted by existing law or a good faith argument for the modification thereof; and (c) not interposed for any improper purpose. If a signed pleading, motion or other paper is found to be in violation of Rule 11 in any one of these three particulars, the Court *must* impose an appropriate sanction. In this respect, the Court has no discretion. *INVST Financial Group v. Chem–Nuclear Systems*, 815 F.2d 391, 401 (6th Cir. 1987).

■ In dismissing the present complaint, the Court made a summary determination essentially that plaintiff's challenges to the constitutionality of the Lansing Building Code were not warranted by existing law and that no colorable justification for modification of existing law had been presented. The motion to impose sanctions asks the Court to find that plaintiff's counsel, Michael Null, did not have a reasonable belief that a different result would obtain. This conclusion would have to be based upon a finding either that counsel had not made a reasonable prefiling inquiry into the legal basis for the complaint; or that, notwithstanding his reasonable prefiling inquiry, counsel filed the complaint, with knowledge that it was of dubious merit, for an improper purpose, such as harassment. Counsel's conduct must be evaluated in terms of whether it was objectively reasonable under the circumstances. *Id.*

## II

■ The first step in evaluating counsel's conduct is to examine the product of his efforts, the complaint. Plaintiff, Karen Christy has operated and wishes to continue operating an adult book, magazine and

video store at 1933 N. Larch Street in Lansing. This, she asserts, is in exercise of her right of free speech protected under the First Amendment. On August 6, 1987, the certificate of occupancy issued in 1983 for the building situated at 1933 N. Larch Street was summarily revoked by the City of Lansing. While this revocation forms the factual backdrop for the complaint, presumably conferring standing, the complaint does not challenge the revocation directly. Rather, the complaint presents a *facial* challenge to the constitutionality of the Lansing Building Code. Specifically, the occupancy permit provisions are said to be constitutionally infirm because they specify no time period within which the City must act upon applications; and because they are devoid of "narrow, objective and definite standards" which guide the City official's exercise of discretion in acting upon applications and in revoking occupancy permits. There is no allegation that the occupancy permit provisions are unconstitutional "as applied" to plaintiff and no allegation that they have been enforced so as to discriminate against First Amendment protected speech based on content or otherwise.

The ordinance under attack is a legitimate exercise of governmental police power which promotes the public health, safety and welfare by regulating buildings and structures. It is absolutely speech content neutral. Yet, plaintiff complains the ordinance is unconstitutional because the regulation of buildings accomplished thereunder may incidentally restrict speech within the buildings without providing the requisite procedural safeguards.

## III

Plaintiff asserts in Count I that the ordinance should specify a time period within which the City must act upon an occupancy permit application. Otherwise, it is con-

---

paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a rep-

resented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

tended, the City could, by delay in processing a permit application effectively deny the First Amendment rights of one who wished to engage in protected speech within the subject building. In support, plaintiff cites *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). In *Freedman*, the Supreme Court struck down a motion picture censorship statute which failed to provide assurance of a prompt determination on an application for a license to exhibit a film.

▮ The statute at issue in *Freedman* is materially distinguishable from the Lansing Building Code. The censorship statute represented a direct and prior restraint on speech based on content, thus "bearing a heavy presumption against its constitutional validity," and requiring carefully designed procedural safeguards. *Id.*, 380 U.S. at 57, 85 S.Ct. at 738. The Lansing Building Code occupancy provisions, on the other hand, are a *generally applicable* exercise of police power which only incidentally encumber speech. Otherwise valid laws of general applicability which serve substantial public interests do not offend the First Amendment even though speech may be burdened thereby. *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 581, 103 S.Ct. 1365, 1369, 74 L.Ed.2d 295 (1983); *Branzburg v. Hayes*, 408 U.S. 665, 682–83, 92 S.Ct. 2646, 2657–58, 33 L.Ed.2d 626 (1972). Furthermore, the circumstances noted in *Freedman* which rendered time of the essence when a motion picture is subject to a prior restraint are simply not applicable to regulation under the Lansing Building Code. Thus, a generally applicable police power regulation which incidentally restricts speech need not contain carefully drawn procedural safeguards to satisfy the First Amendment. That the Lansing Building Code serves a legitimate gov-

ernmental purpose and is rationally related thereto is sufficient to sustain it.

▮ Plaintiff's counsel admits there is no case law which directly supports the asserted theory, but he insists the prayer for an extension of existing law is made in good faith.[2] However, it occurs to this Court there is little support for the theory because it offends not only constitutional law, but also common sense. Local government would be hopelessly hamstrung in its efforts to maintain and improve public health, safety and welfare, if promulgation of general regulations necessitated accommodations for potential incidental effects upon the exercise of individual civil liberties. While it may be agreed that a specified time period would be a worthwhile addition to the Lansing Building Code, to suggest the ordinance is unconstitutional *per se* for lack of such a provision because it may be applied to buildings where First Amendment activity may take place is patently groundless.

## IV

Counts II and III of the complaint assert the Lansing Building Code is unconstitutional because it enables prior restraint of speech without providing sufficiently narrow, objective and definite standards to guide the City official in the exercise of discretion. *Shuttlesworth v. City of Birmingham, Alabama*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). These claims are flawed in the same manner as count I. They are based on the false premise that the Lansing Building Code is a direct restraint on speech. It is not. It is rather a legitimate exercise of police power, a regulation of general applicability which only incidentally burdens speech. Therefore, as discussed *supra*, the ordinance need not contain carefully drawn procedural safe-

**2.** Plaintiff's counsel cites three cases for the proposition that even content-neutral regulations are subject to closer scrutiny when they burden speech. *Minneapolis Star v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983); *Arkansas Writers' Project v. Ragland*, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987); *City of Los Angeles v. Preferred Communications*, 476 U.S. 488, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986). The argument ignores the critical fact that in each of these cases, legislation which directly and purposefully burdened speech was at issue. Thus, all three cases are clearly and materially distinguishable from the present action.

guards, like specific standards, to pass constitutional muster.

On the other hand, even if such a requirement were applicable, it plainly appears the Lansing Building Code would be in compliance. With respect to issuance of a certificate of occupancy, the ordinance provides;

> After final inspection when it is found that the building or structure complies with the provisions of this code and other laws which are enforced by the code enforcement agency, the building official shall issue a Certificate of Occupancy....

Uniform Building Code, § 307(c). With respect to revocation of a certificate, the ordinance provides:

> The building official may, in writing, suspend or revoke a Certificate of Occupancy issued under the provisions of this code whenever the certificate is issued in error, or on the basis of incorrect information supplied, or when it is determined that the building or structure or portion thereof is in violation of any ordinance or regulation or any of the provisions of this code.

Uniform Building Code, § 307(f). Thus, exercise of the building official's authority in denying or revoking a certificate is conditioned upon a determination that the subject building is not in compliance with governing laws. Though the governing laws are not reproduced at length at § 307 of the code, they are incorporated by reference and clearly provide specific and objective guidelines for the exercise of the building official's discretion. Accordingly, the Lansing Building Code is clearly not unconstitutional on its face for lack of definite standards.

### V

The Court has reiterated the reasons for the earlier dismissal of the complaint to explain why it is properly characterized as frivolous. Furthermore, it is apparent that the state of the facts and law is so plain as to render unavoidable the conclusion that plaintiff's counsel either knew or should have known that it was frivolous. It is unnecessary to determine which of these alternatives is true—either, standing alone, constitutes a Rule 11 violation.

Plaintiff's counsel's insistence that he acted in good faith offers no defense to the motion for sanctions, for the standard is one of *objective* reasonableness under the circumstances.

> Rule 11 requires counsel to study the law before representing its contents to a federal court. An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating. Counsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorneys' fees under the Rule.... It is not acceptable to make an assertion of law and hope that it will turn out to be true.

*Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986). Counsel's signing and filing of the complaint was not reasonable under the circumstances.

Counsel argues that penalizing him for asserting a creative legal theory will have a "chilling" effect upon assertion of First Amendment rights. The Court is not unmindful of this very real concern. Yet, creativity by itself is not enough. Unless creativity is employed in service of a good faith application of the law or at least a good faith request for a change in the law, it is precisely the sort of creativity Rule 11 should chill. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3rd Cir.1987).

Without determining that plaintiff's counsel acted in bad faith, the Court notes this is but one of several recent lawsuits between the parties regarding the operation and regulation of the same adult bookstore. This history creates an inference that the present action, obviously lacking in merit, may have been commenced for purposes of revenge or harassment. Such an abuse of legal process is clearly in violation of Rule 11. One who seeks vindication in federal court and fails must expect to pay his opponent's reasonable attorney's fees. *Dreis & Krump Mfg. v. International Ass'n of Machinists*, 802 F.2d 247, 255 (7th Cir.1987). That plaintiffs counsel is from

out-of-state and was purportedly unaware of the parties' past history certainly does not absolve him of responsibility for conducting a reasonable prefiling investigation. And inasmuch as plaintiff's counsel was assisted by local counsel, Franklin Brussow, who is familiar with the parties' history, he is without excuse.

Accordingly, the Court finds the instant complaint was signed and filed in violation of Rule 11. An appropriate sanction is mandated.

## VI

■ The Court is vested with considerable discretion in fashioning an appropriate sanction. *INVST Financial Group v. Chem–Nuclear Systems, supra,* 815 F.2d at 401. The Court must consider the goals of Rule 11, "which are the deterrence and punishment of offenders and the compensation of their opponents for expenditure of time and resources responding to unreasonable pleadings or motions." *Id.,* 815 F.2d at 404. Rule 11 expressly provides that an appropriate sanction may include an award of a reasonable attorney's fee.

■ Here, defendant City of Lansing asks the Court to award it total costs and attorney's fees of $5,592.50. The Court has reviewed the bill of costs submitted and finds it to be reasonable. The time and resources expended in defense of this action appear to be reasonable under the circumstances. The Court further finds the amount prayed for represents an appropriate sanction inasmuch as (1) these expenses were necessitated solely by this groundless lawsuit; and (2) the amount is commensurate with the purposes of punishing the instant wrong and deterring future abuse of the right of access to the courts. This sanction is to be imposed upon plaintiff's counsel, Michael Null, who signed the complaint, because, regardless of plaintiff's true motives, counsel was ultimately responsible for ensuring any claim presented was based on good faith application of the law. An order consistent with this opinion, imposing this monetary sanction upon plaintiff's counsel and awarding the same amount to defendant, shall issue forthwith.

## ORDER OF THE COURT

In accordance with the Court's written Opinion issued on August 30, 1988,

IT IS HEREBY ORDERED that the motion of defendant City of Lansing for imposition of a sanction under Fed.R.Civ.P. 11 is GRANTED;

IT IS FURTHER ORDERED that a sanction in the amount of $5,592.50 is imposed upon plaintiff Karen Christy's counsel, Michael Null;

IT IS FURTHER ORDERED that this sanction in the amount of $5,592.50 is hereby awarded to defendant City of Lansing.