Jane DOE, Plaintiff, Appellant.

United States of America,
Intervenor, Plaintiff,

v.

Antoine WALKER, Defendant,
Appellee.

Ronald Mercer, Michael Irvin,
Chauncey Billups,
Defendants.

Now Legal Defense & Education
Fund, Interested Party.

No. 99–1095.

United States Court of Appeals,
First Circuit.

Heard Sept. 10, 1999.

Decided Oct. 4, 1999.

Margaret A. Burnham with whom Burnham & Hines was on brief for appellant.

Nicholas C. Theodorou with whom Toni G. Wolfman, David A. Anderson and Foley, Hoag & Eliot LLP were on brief for appellee.

Before BOUDIN, Circuit Judge
BOWNES, Senior Circuit Judge, and
STAHL, Circuit Judge.

BOUDIN, Circuit Judge.

This appeal presents an unusual question of Massachusetts law concerning the possible duty of a social host to protect his guest from the criminal acts of another guest where this can be done without risk to the host. Because the appeal is from a dismissal for failure to state a claim, Fed. R.Civ.P. 12(b)(6), we set forth the facts as alleged in the complaint, drawing reasonable inferences in favor of the non-moving party, here the appellant "Jane Doe." See *Day v. Massachusetts Air Nat'l Guard*, 167 F.3d 678, 680 (1st Cir.1999).

From the complaint, the following allegations can be derived. Doe first became acquainted with the appellee, Antoine Walker, a professional basketball player,

around May 1997, and dated him sporadically thereafter. In the course of their dating relationship, Doe had on several occasions visited Walker's home in Waltham, Massachusetts, where she became acquainted with Michael Irvin, who lived in Walker's home. Similarly, Doe met Dennis Smith, who also lived in Walker's home.

On the night of November 9, 1997, Doe went to a comedy club in Boston, Massachusetts, where she socialized with Walker, Irvin, and Smith, as well as two of Walker's teammates—Ronald Mercer and Chauncey Billups—whom Doe had not previously met. As the group prepared to leave the club, Irvin told Doe that Walker wanted her to visit him at his home. Walker and Smith left the club in one car while Billups drove Doe, Irvin and Mercer in another car. When Billups' car arrived at Walker's home, Doe was directed to Irvin's bedroom. There, all three men began to subject Doe to a series of sexual acts, including sexual intercourse, without her consent and despite her attempted resistance. At one point during this assault, Walker entered Irvin's bedroom, and Irvin asked Walker "Don't you want some?" but Walker declined and left.

After Walker left Irvin's bedroom, the assault continued. Doe awoke the next morning. She located Smith, who drove her home but told her not to report the incident. Later that day, Doe sought medical attention at the Boston Medical Center. The medical examination revealed bruises about Doe's body and injuries to her throat, cervix and rectum, and she was diagnosed as suffering from shock. That same day, Doe provided police with a report of the assault. This is the gist of the allegations in the complaint.

On April 15, 1998, Doe filed suit in federal court, naming Mercer, Irvin, Billups and Walker as defendants. As amended, Doe's complaint asserted claims against Mercer, Irvin, and Billups under the Violence Against Women Act, 42 U.S.C. § 13981, as well as state claims of assault and battery and intentional infliction of emotional distress. Doe also asserted a state common law claim of negligence against Walker, contending that he breached a duty that he owed to her in his role of social host. Only this single claim against Walker is the subject of this appeal.

On May 14, 1998, Walker moved to dismiss the claim against him on the ground that Doe had failed to state a claim. On December 18, 1998, the district court granted Walker's motion to dismiss; it reasoned that Walker had no duty under Massachusetts law to intervene or otherwise to protect Doe from the assault by the others. On February 19, 1999, the district court entered a separate, final judgment as to Walker pursuant to Fed. R.Civ.P. 54(b), permitting this immediate appeal while Doe's suit against the other three defendants continues.

If Walker were a passerby who ignored a stranger in peril, this would be an easy case. For a variety of reasons, Anglo–American law, unlike some Continental regimes, imposes no general duty to assist others in peril. *See* 3 Harper, James & Gray, *The Law of Torts* § 18.6, at 718–19 (2d ed.1986). The reasons for this reluctance to impose such a duty are the usual compound of history and policy. *See id.* at 719 n. 10, 725 n. 26. Massachusetts courts interpreting the common law follow this general principle. *See generally Jean W. v. Commonwealth,* 414 Mass. 496, 610 N.E.2d 305, 318–19 (1993) (O'Connor, J., concurring)

Yet in Massachusetts, as elsewhere, there is continuing pressure to carve out special situations in which some kind of duty to protect may be found. Two sets of Massachusetts precedents are invoked by Doe here: the most helpful to her arise in cases recognizing various common law duties of property owners toward guests,

other invitees and even trespassers;[1] and the other, arguably less relevant here, are cases in which a host takes affirmative steps that causally connect to later harm done by a guest to a third party (*e.g.*, a social host serving liquor to an intoxicated guest who later drives home and hits a pedestrian). *E.g.*, *McGuiggan v. New England Tel. & Tel. Co.*, 398 Mass. 152, 496 N.E.2d 141, 146 (1986).

The common law duties of a property owner toward a guest generally include an obligation to take reasonable care to provide a safe premises, including warnings to the guest as to dangers of which the host knows or should know. *Polak*, 487 N.E.2d at 215–16. In principle, nothing would prevent applying this obligation where the host knew that another guest had a record of committing violent acts. Several Massachusetts cases, involving failures of a property owner to protect his guests from the criminal acts of others on the premises, declined to hold the hosts liable, but in doing so, stressed that the host had no reason to know that criminal acts were likely until it was too late to prevent them. *Anthony H. v. John G.*, 415 Mass. 196, 612 N.E.2d 663, 666 (1993); *Husband v. Dubose*, 26 Mass.App.Ct. 667, 531 N.E.2d 600, 603 (1988).

But suppose that the social host becomes aware of a crime in progress involving an assault by one of his guests upon another; that the host could avert or ameliorate the danger at no risk to himself; and that he nevertheless chooses to do nothing. The district court, drawing every possible inference in favor of Doe based on the bare bones complaint, was prepared to assume that Walker had authorized or at least endorsed the invitation to Doe and that Walker had not only become a witness to a rape but had known that Doe was being assaulted and that she had not consented to the encounter. And while the district court does not directly mention the

opportunity for Walker to halt the assault without risk to himself, that is an inference at least as easy to draw in favor of Doe as the other two. (Of course, further evidence might reveal that Walker could have done nothing to stop the assault, but actions ranging from telling the others to stop to calling 911 present themselves as reasonable possibilities.)

Facing this situation squarely, the district court concluded that Walker would still have no duty to intervene. The district court explained:

> Rather, the law discourages such intervention as much as human sentiment applauds the good Samaritan. The law is so for reasons of social policy that are intended to curb vigilantism and to avert the risk of untrained civilians causing personal injury to themselves or creating an even greater risk to the victim.

Added to the practical considerations mentioned by the district court is the general reluctance of the law to impose affirmative duties to aid except in narrowly defined situations based on special relationships (*e.g.*, parent-child, policeman-citizen) and the benefit of bright lines in reducing litigation.

But Massachusetts case law does not definitely rule out liability in the hypothetical case we have posited. The only precedent cited to us that is closely in point is *Husband v. Dubose*, 26 Mass.App.Ct. 667, 531 N.E.2d 600 (Mass.1988), where the defendant was sued when unexpectedly one of her two guests drew a knife, stated that she intended to kill the other guest and eventually inflicted knife wounds on the other guest. Since the defendant had no reason to expect the fight, the court easily rejected lack of a prior warning as a ground of liability. *Id.*, 531 N.E.2d at 603. Needless to say, a defendant is "not required to take precautions against a sudden attack from a third person which he

---

1. *E.g.*, *Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331 (1983); *Mounsey v. Ellard*, 363 Mass. 693, 297 N.E.2d 43 (1973);

*Polak v. Whitney*, 21 Mass.App.Ct. 349, 487 N.E.2d 213 (1985).

has no reason to anticipate." *Id.*, at 602 (quoting *Restatement (2d) of Torts* § 314A, cmt. e (1964)).

However, *Husband* also addressed the claim that the defendant might have breached a duty to render aid once the knife attack had begun. The court held that the host, "now in danger herself and badly frightened, could not have been expected to disarm [the assaulter] or to remain in the house," and it said that the defendant's warning to the plaintiff to flee "was an adequate response to a very dangerous situation that had arisen suddenly." *Husband,* 531 N.E.2d at 603. After noting that it was the plaintiff who had chosen "to ignore the warning", the court concluded:

> We are ... not prepared to say that prevailing values and expectations required the defendant to be more vigilant of security, to intervene directly, or to summon assistance at the risk of serious personal injury to herself or of causing greater danger to the plaintiff.... [W]e conclude, as did the [trial] judge, that the circumstances imposed no duty on the defendant.

*Id.* at 672 (footnote omitted).

Assuredly, *Husband* would protect Walker if he had believed that he could not intervene without risk to himself or to Doe. But if Walker could have intervened without risk, we think that it is far from clear that the *Husband* decision forecloses liability; technically, the case did not decide the issue because, as the court construed the facts, there was no such opportunity for a riskless rescue. Indeed, the court pointed to the lack of proof that, if the police had been summoned by the defendant, help would have arrived in time to prevent the stabbing.

Indignation is not a reliable trigger for imposing a duty to act since the common law refuses to impose liability in a wide swath of cases where morality would require action (typified by the refusal to throw a drowning stranger a rope from the pier). Still, it is instructive to consider an older decision, cited to us by neither of the parties, with egregious facts. In *Pridgen v. Boston Housing Auth.,* 364 Mass. 696, 308 N.E.2d 467 (1974), the Supreme Judicial Court cast aside the usual distinction between misfeasance and nonfeasance and upheld a jury verdict for the plaintiff where a child trespasser had crawled into an elevator shaft of a building owned by the defendant and the building agent, despite notice and a plea from the boy's mother, failed to turn off power in the elevator.

The child was thereafter injured and the jury found the building owner liable for the "wilful, wanton or reckless conduct" of its agent, the standard deemed to apply in the case of a trespasser. In upholding the verdict, the SJC said that it did not matter that the defendant's conduct could be described simply as a failure to act. *Id.* at 476–77. The case is clearly distinguishable in that it did not involve a failure to intervene in criminal conduct by one person on the premises directed against another and that none of the concerns about vigilantism or risk to the owner were present. However, decisions like *Pridgen* do suggest that the SJC, like most other courts, responds as much to facts as to abstractions, and it confirms to us that further development of the facts in this case is well warranted before Doe's claim is written off as hopeless.

We would affirm without hesitating if Massachusetts case law had squarely rejected liability in the case of the social host who costlessly could have saved a guest from harm but failed to act. Plaintiffs who come to federal court and ask federal judges to forecast a substantial *change* in state law will normally get a cold reception. *Ryan v. Royal Ins. Co.,* 916 F.2d 731, 744 (1st Cir.1990). But we think that the Massachusetts courts have not clearly spoken one way or the other and, while they would surely give weight to concerns about vigilantism, they might on extreme

facts (as in *Pridgen* ) choose to treat inaction as equivalent to action.

The legal issue presented is one that has important social and moral implications,[2] and we decline to decide it without more facts. In areas like this one, the common law tradition is one of deciding such matters in the concrete and not in the abstract. This is in part because further facts may make it unnecessary to decide the hard case but also because the facts are likely to contribute to a more sensitive assessment of what the law "is" (which, absent decisive precedent, means what it "should be"). Our preference for a better record is well supported and, while not mandatory, is one which we are entitled to require for reasons of prudence.[3]

 The same paucity of facts makes it impractical for us to certify the issue to the Massachusetts Supreme Judicial Court. Of course, we could pose the question on *one* set of extreme assumed facts, but suppose the SJC replied that liability on such facts would exist: it is at least even odds that one or more of the extreme facts so assumed would be disproved at the summary judgment or trial stage, and there is no assurance that anything the SJC said about that hypothetical case would tell us how to solve the matter on the facts actually presented.

Accordingly, we hold that dismissal at this stage was premature, vacate the judgment of dismissal, and remand to the district court for further development of the facts. We do not, however, foreclose the possibility of summary judgment in favor of Walker after a more complete record has been developed. It is far from clear whether Walker authorized, acquiesced or even knew of Doe's presence at the house prior to the alleged assault; nor is it clear that he knew that an assault was occurring. Further, as Irvin was himself living in the residence and extended the invitation, this might mitigate any duty that Walker might otherwise have had.

An alternative resolution deserves some consideration by the district court. The claim against Walker, unlike the claims against the other defendants, is not coupled with a federal claim against him, nor is there any suggestion of diversity jurisdiction. In such a case, the statute gives the district court discretion to decline jurisdiction over a supplemental state claim where, as here, it raises a novel or complex issue of state law. 28 U.S.C. § 1367(c)(1). *Cf. Houlton Citizens' Coalition v. Town of Houlton,* 175 F.3d 178, 192 (1st Cir.1999). Occasionally, we have even directed such a dismissal where the federal claims have disappeared and where no economies justified having a federal court resolve the remaining state issues. *See id.*

However, in this instance economies may exist since discovery and possibly trial may proceed in respect to the other defendants. But the district court can balance this against the benefit of having the state system resolve an unusual question of state law with broad implications for state policy. So far as we can ascertain, the statute of limitations on Doe's claim would not expire until November 2000 (*see* M.G.L.A. ch. 260 § 2A), and it is probably subject to the Massachusetts one-year tolling statute in any event. *See id.* ch. 260, § 32; *Liberace v. Conway,* 31 Mass.App. Ct. 40, 574 N.E.2d 1010, 1011–13 (1991).

The judgment of the district court is *vacated* and the matter is *remanded* for

---

**2.** Imagine that Doe had suffered a heart attack while Doe and Walker were alone in the house and that Walker, knowing that Doe could be saved by a telephone call for an ambulance, instead left her alone to die, unconscious and unable to fend for herself.

**3.** *City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 495, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); *Shull v. Pilot Life Ins. Co.,* 313 F.2d 445, 446–47 (5th Cir.1963); *Branch v. FDIC,* 825 F.Supp. 384, 397–98 (D.Mass.1993); *see generally* 5A Wright & Miller *Federal Practice & Procedure: Civil* § 1357, at 340–44 (2d ed.1990).

further proceedings consistent with this opinion.

*It is so ordered.*