**TURNER BROADCASTING SYSTEM, INC., et al., Plaintiffs,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION, et al., Defendants.**

**DANIELS CABLEVISION, INC., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**TIME WARNER ENTERTAINMENT COMPANY, L.P., Plaintiff,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION, et al., Defendants.**

**NATIONAL CABLE TELEVISION ASSOCIATION, INC., Plaintiff,**

**v.**

**UNITED STATES of America, et al., Defendants.**

**DISCOVERY COMMUNICATIONS, INC., et al., Plaintiffs,**

**v.**

**UNITED STATES of America, et al., Defendants.**

Civ. A. Nos. 92–2247, 92–2292, 92–2494, 92–2495, 92–2558.

United States District Court, District of Columbia.

Dec. 23, 1992.

Dissenting Opinion of Judge Jackson Jan. 5, 1993.

sion, Washington, DC, Christopher Fager, E! Entertainment Television, Inc., Los Angeles, CA, Jane Tollinger, Hearst/ABC–Viacom Entertainment Services, Astoria, NY, Louis A. Isakoff, International Family Entertainment, Inc., Virginia Beach, VA, Bruce D. Collins, National Cable Satellite Corp., Washington, DC, Neal S. Grabell, QVC Network, Inc., West Chester, PA, Louis F. Ryan, The Travel Channel, Inc., Atlanta, GA, Stephen A. Brenner, USA Networks, New York City, for Turner Broadcasting.

John P. Cole, Jr., John D. Seiver, Cole, Raywid & Braverman, Washington, DC, for Daniel Cablevision.

Brian Conboy, Wilkie Farr & Gallagher, Washington, DC, Robert D. Joffe, Stuart W. Gold, Stephen S. Madsen, Cravath, Swaine & Moore, New York City, for Time Warner.

H. Bartow Farr, III, Joel I. Klein, Klein, Farr, Smith & Taranto, Daniel L. Brenner, Michael S. Schooler, Diane B. Burstein, National Cable Television Association, Inc., Washington, DC, for National Cable Television.

Allan A. Tuttle, Garret G. Rasmussen, Kenneth L. Glazer, G. Kendrick MacDowell, Patton, Boggs & Blow, John R. Tyler, Theodore C. Hirt, U.S. Dept. of Justice, Civil Div., Washington, DC, for Discovery.

Rex E. Lee, Robert A. Beizer, Carter G. Phillips, Mark D. Hopson, Sidely & Austin, James J. Popham, Association of Independent, Television Stations, Inc., Washington, DC, for Association of Independent Television Stations, Inc.

Bruce J. Ennis, Jr., David W. Ogden, Donald B. Verrilli, Jr., Ann M. Kappler, Jenner & Block, Henry L. Baumann, Benjamin F.P. Ivins, Jack N. Goodman, National Association of Broadcasters, Washington, DC, for Nat. Ass'n of Broadcasters.

Andrew Jay Schwartzman, Gigi B. Sohn, Media Access Project, Washington, DC, for Consumer Federation of America, National Council of Senior Citizens, International Association of Machinists and Aerospace Workers, AFL–CIO, United Church of Christ.

Bruce D. Sokler, Peter Kimm, Jr., Gregory A. Lewis, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Bertram W. Carp, Turner Broadcasting System, Inc., Washington, DC, Mary Ann Zimmer, Arts & Entertainment Network, New York City, Debbie Lee, Black Entertainment Televi-

Jonathan D. Blake, Gregory M. Schmidt, Mark H. Lynch, Covington & Burling, Marilyn Mohrman–Gillis, Association of America's Public Television Stations, Washington, DC, Paula A. Jameson, Nancy Howell Hendry, Public Broadcasting Service, Alexandria, VA, Paul E. Symczak, Corporation for Public Broadcasting, Washington, DC, for Association of America's Public Television Stations, PBS, Corporation for Public Broadcasting.

Henry A. Solomon, Theodore D. Kramer, Haley, Bader & Potts, Arlington, VA, for Community Broadcasters Ass'n.

Roy F. Perkins, Herndon, VA, for Triplett & Associates.

Robert T. Perry, Brooklyn, NY, Paul Broyles, International Broadcasting Network, Houston, TX, for Local Community Broadcasters.

Steven J. Hyman, Robert I. Freedman, Janet C. Neschis, Paul H. Levinson, Leavy, Rosenweig & Hyman, New York City, Jonathan L. Wiener, Goldberg, Godles, Wiener & Wright, Washington, DC, for National Interfaith Cable Coalition.

Robert Alan Garrett, Arnold & Porter, Washington, DC, for Local Governments (National League of Cities, et al.

John B. Richards, Shelia A. Millar, Arthur S. Garrett III, Keller and Heckman, Washington, DC, for National Rural Telecommunications Co-op.

Theodore D. Kramer, Haley, Bader & Potts, Arlington, VA, for TV 14, Inc.

Philip R. Hochberg, James E. Meyers, Baraff, Koerner, Olender & Hochberg, P.C., Washington, DC, for Encore Media Corp.

Teresa D. Baer, Miller & Holbrooke, Washington, DC, Edward P. Kearse, John L. Grow, New York State Com'n on Cable Television, Albany, NY, for National Ass'n of State Cable Agencies.

Nicholas W. Allard, Paul J. Sinderbrand, Keck, Mahin & Cate, Washington, DC, for Wireless Cable Ass'n Intern., Inc.

Colby M. May, May & Dunne, Chartered, Washington, DC, for Trinity Christian Center, etc.

James Johnston, Washington, DC, amicus curiae, for Atlanta Interfaith Broadcasters.

Larraine S. Holbrooke, Tillman L. Lay, Joseph Van Eaton, Miller & Hollbrooke, James N. Horwood, Spiegel & McDiarmid, Washington, DC, James Hahn, Pedro B. Echeverria, City of Los Angeles, Los Angeles, CA, amicus curiae, for City of Los Angeles, etc.

Norman M Sinel, Robert Alan Garrett, Preeta D. Bansal, Arnold & Porter, Washington, DC, amicus curiae, for City of New York.

Alan K. Weitz, Ginsburg Feldman & Bress, Washington, DC, Andrew J. Levander, Shari L. Steinberg, Adam B. Rowland, Michael Cohen, New York City, amicus curiae, for Liberty Cable Co.

Before WILLIAMS, Circuit Judge, and SPORKIN and JACKSON, District Judges.

STEPHEN F. WILLIAMS, Circuit Judge.

Plaintiffs are cable television programmers and system operators who challenge the constitutionality of various sections of the Cable Television Consumer Protection and Competition Act of 1992, Pub.L. No. 102–385, 106 Stat. 1460. The questions immediately before us are whether this three-judge court, constituted pursuant to § 23 of the Cable Act and 28 U.S.C. § 2284, must or may exercise jurisdiction over all the First Amendment and other constitutional claims that certain plaintiffs have filed attacking provisions of the Act, or only over challenges to §§ 4 and 5, the ones identified by Congress in § 23 as calling for use of a three-judge court; and, if the court *may* (but need not) exercise jurisdiction, whether it should do so. We conclude that the court at most may have discretion to entertain the attacks on parts of the Act other than §§ 4 and 5; assuming it has such discretion, we believe that prudential factors argue for our exercising it against jurisdiction.

\*       \*       \*       \*       \*       \*

The 1992 Cable Act contains 28 sections, of which perhaps 25 may be viewed as substantive, out of which some 14 are at-

tacked by one or more parties. To give an idea of the breadth of the challenges, we here list the challenged sections, identifying them by their number and caption in the Act: Section 3, Regulation of Rates; Section 4, Carriage of Local Commercial Television Signals; Section 5, Carriage of Noncommercial Stations; Section 6, Retransmission Consent for Cable Systems; Section 7, Award of Franchises; Promotion of Competition; Section 9, Leased Commercial Access; Section 10, Children's Protection From Indecent Programming on Leased Access Channels; Section 11, Limitations on Ownership, Control, and Utilization; Section 15, Notice to Cable Subscribers on Unsolicited Sexually Explicit Programs; Section 19, Development of Competition and Diversity in Video Programming Distribution; Section 24, Limitation on Franchising Authority Liability; and Section 25, Direct Broadcast Satellite Service Obligations. This summary understates the scope of the plaintiffs' additional claims, as they often launch attacks on more than one subsection of a single section.

Section 23 of the Act contains explicit provision for review of constitutional claims against §§ 4 and 5, amending § 635 of the Communications Act of 1934, 47 U.S.C. § 555, to add the following subsection (c):

(1) Notwithstanding any other provision of law, any civil action challenging the constitutionality of section 614 [§ 4] or 615 [§ 5] of this Act or any provision thereof shall be heard by a district court of three judges convened pursuant to the provisions of section 2284 of title 28, United States Code.

(2) Notwithstanding any other provision of law, an interlocutory or final judgment, decree, or order of the court of three judges in an action under paragraph (1) holding section 614 [§ 4] or 615 [§ 5] of this Act or any provision thereof unconstitutional shall be reviewable as a matter of right by direct appeal to the Supreme Court. Any such appeal shall be filed not more than 20 days after entry of such judgment, decree, or order.

The focus of § 23 is clearly on judicial review of §§ 4 and 5, which require cable companies to carry the signals of broadcast stations and are known as the "must carry" provisions. Original jurisdiction of the three-judge court is tied to constitutional challenges to those sections, as is review as a matter of right in the Supreme Court.

There are two lines of argument as to why the three-judge court should exercise jurisdiction over constitutional challenges to sections other than the must-carry provisions. First, a literal reading of § 23 provides a three-judge court for *"any civil action"* challenging § 4 or § 5, so that three-judge treatment follows automatically for whatever issues the plaintiffs (or, for that matter, any other party) may manage to bundle within such an action under the generous provisions of the Federal Rules of Civil Procedure as to joinder of claims. Second, plaintiffs assert that we have discretion to take supplemental jurisdiction over claims related to the §§ 4 and 5 challenges, and that prudential considerations argue for doing so. We address the two theories in that order.

### 1. *The meaning of § 23:*

■ The literal reading of § 23 is supported by the traditional assumption that Congress has selected every word with exquisite care: if it had wished to restrict our jurisdiction to §§ 4 and 5, it could have referred to *"any claim"* challenging the must-carry provisions, rather than to *"any civil action"* bringing such a challenge. In assessing this argument, we bear in mind that a parallel one applies to subsection (2), which provides for appeal of right to the Supreme Court for any "interlocutory or final judgment, decree, or order [in a three-judge action under subsection (1)] holding [§ 4 or § 5] unconstitutional". Thus, depending upon how this court chose to package its decision on the other issues with its decision on §§ 4 and 5, the literal reading of · § 23 could send a slew of marginally related claims straight into the mandatory jurisdiction of the Supreme Court.

The difficulty with the literal reading is that it imputes to Congress an intent to saddle the judicial system with rather heavy burdens for no apparent purpose. Section 23 clearly manifests an interest in prompt resolution of any constitutional doubts about §§ 4 and 5—at the highest level if the lower-court decision should be adverse. That there would be doubts on the must-carry provisions was obvious. The Federal Communications Commission had twice promulgated must-carry rules that the court of appeals for our circuit had struck down as violations of the First Amendment, with the Supreme Court denying certiorari. *Quincy Cable TV, Inc. v. FCC,* 768 F.2d 1434 (D.C.Cir.1985), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 977 (1986); *Century Communications Corp. v. FCC,* 835 F.2d 292 (D.C.Cir. 1987), *cert. denied,* 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 602 (1988). Congress was of course aware of these decisions, see S.Rep. No. 102–92, 53 (1991), U.S.Code Cong. & Admin.News p. 1133 and, for anyone who missed the issue, President Bush rested his veto in part on his belief that the must-carry provisions were unconstitutional, see 138 Cong.Rec. H11477 (1992). Thus there was ample reason for special treatment of §§ 4 and 5. Yet none of the parties, many of them intimately involved in the evolution of the Act, suggests any reason why Congress might have wanted similar treatment for any issue that parties might happen to attach to a suit on § 4 or § 5.

Moreover, the omnibus reading of § 23 inflicts considerable burdens on the federal judicial system. Having three judges rule on every single procedural or substantive issue that may arise triples the normal cost of a case for the district court. In fact, Congress has in recent years shrunk the jurisdiction of three-judge courts drastically, Pub.L. No. 94–381, §§ 1, 2, 90 stat. 1119 (1976) (repealing 28 U.S.C. § 2282), precisely for the purpose of relieving the federal courts of the resulting burden, see S.Rep. No. 94–204, 3 (1975), U.S.Code Cong. & Admin.News p. 1988. And the literalist mode of interpretation would visit a similar reverse windfall on the Supreme Court, despite recent congressional efforts to trim its mandatory jurisdiction. Pub.L. No. 100–352, § 1, 102 Stat. 662 (1988) (repealing 28 U.S.C. § 1252). See also S.Rep. No. 94–204, 3–4 (1975) (noting that direct appeal from three-judge courts erodes the Supreme Court's control over its workload). As the burden on both lower federal courts and the Supreme Court imposed by the broad reading of § 23 would in this context be a distinctly "odd result", see *Public Citizen v. Department of Justice,* 491 U.S. 440, 454, 109 S.Ct. 2558, 2566, 105 L.Ed.2d 377 (1989), and as the legislative history yields no clue supporting such a view, we read § 23 as providing mandatory jurisdiction solely over the constitutional attacks on §§ 4 and 5.

2. *Discretionary supplemental jurisdiction:*

■ The second argument in favor of the three-judge court's jurisdiction over all of the pending claims is that we have the statutory authority to hear them and should do so. Plaintiffs invoke 28 U.S.C. § 1367(a) (Supp. II, 1990), providing "supplemental jurisdiction" for United States district courts:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Section 1367 may not relate to our problem. It appears to address the question of the jurisdiction of "district courts" *generally,* allowing such courts "supplemental jurisdiction" over other claims—ones over which federal district courts would otherwise lack jurisdiction. But here there is no dispute about the jurisdiction of federal district courts over plaintiffs' numerous federal constitutional attacks on provisions

of the Cable Act;[1] the question is only the allocation of jurisdiction between a three-judge panel and the district court out of which it has been created. Of course before the enactment of § 1367 three-judge courts exercised an ancillary jurisdiction akin to that applied in the more conventional situation. See, e.g., *Allee v. Medrano,* 416 U.S. 802, 811–12, 94 S.Ct. 2191, 2198–99, 40 L.Ed.2d 566 (1974). So Congress's extension of the concept (indeed, as we shall see, its decision to push it to the limit) in the area that § 1367 expressly covers might make it appropriate for the courts to do so in the three-judge context. Compare Frank H. Easterbrook, Statutes' Domains, 50 U.Chi.L.Rev. 533 (1983). As we have seen, however, Congress has recently made changes reflecting its disenchantment with three-judge courts and its recognition of their rather high costs, so any such extension of the statutory language seems highly questionable. In any event, even if § 1367 were applicable to the situation in general, we are not persuaded that it calls for the exercise of our jurisdiction over the claims against sections other than §§ 4 and 5.

Where applicable, § 1367 provides supplemental jurisdiction over claims that "are so related to [the claims entitled to original jurisdiction] ... that they form part of the same case or controversy under Article III of the United States Constitution". This incorporates the test of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), explaining that, to constitute a single "constitutional 'case' ", *id.* at 725, 86 S.Ct. at 1138, different claims must "derive from a common nucleus of operative fact" and be such that, "considered without regard to their federal or state character [the problem posed in *Gibbs*], [the] plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding", *id.* See also Wright, Miller and Cooper, Federal Practice and Procedure, vol. 13B, 1992 Pocket Part at 38 (noting congressional intent to push the supplemental jurisdiction

to the outer limit permitted by the Constitution); *Sinclair v. Soniform, Inc.,* 935 F.2d 599, 603 (3rd Cir.1991) (applying *Gibbs* test to case under § 1367).

The facial constitutional challenges that the plaintiffs bring before us are linked to the §§ 4 and 5 claims in three senses: (1) they relate to provisions of the same statute; (2) they rest almost entirely on the First Amendment; and (3) there are, not surprisingly, some modest relationships between §§ 4 and 5 and the other sections under attack. Plaintiffs point to no authority suggesting that such links, alone or in the aggregate, could satisfy the *Gibbs* test.

The fact of a single statute clearly means little. The Cable Act occupies 45 pages in the statute books. See 106 Stat. 1460–1504. If courts accepted the mere fact of simultaneous enactment as supplying a "common nucleus of operative fact", the concept would lose virtually all meaning.

Plaintiffs thus rest heavily on the unifying theme of the First Amendment. They argue that because the Supreme Court has not specifically identified cable television either with the First Amendment approach that it has taken to over-the-air broadcasting, see, e.g., *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), or with that applied to the print media, see, e.g., *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974), the litigation will ultimately resolve that issue and thus can be said to involve the same case. Indeed, the Court's only direct statement on the subject so far has been the rather vague one that cable television communications "plainly implicate First Amendment interests". *Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 494, 106 S.Ct. 2034, 2037, 90 L.Ed.2d 480 (1986).

There are several difficulties with plaintiffs' theory. First, while the overlap of an important legal issue is in some circumstances grounds for *intervention,* see, e.g.,

---

1. We here put aside the implications of our ruling in *TRAC v. FCC,* 750 F.2d 70, 77–79 (D.C.Cir.1984), which, like the issue before us, involves the allocation *among* federal courts of jurisdiction over matters over which at least one has conceded jurisdiction.

*Nuesse v. Camp,* 385 F.2d 694, 701–02 (D.C.Cir.1967), plaintiffs cite no authority for the idea that such an overlap is enough for supplemental jurisdiction over otherwise disconnected claims. Again, the proposition would radically expand the idea of a "common nucleus of operative fact".

Second, plaintiffs err in supposing that each communicative medium is governed by a single First Amendment standard. In fact, standards vary within a single medium depending on the character of the disputed restriction. For example, in reviewing content-based restrictions on over-the-air broadcasting, see, e.g., *FCC v. League of Women Voters,* 468 U.S. 364, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984), the Court has plainly engaged in more searching scrutiny than in considering more structural regulations of the industry such as the "cross-ownership" rules, see, e.g., *FCC v. National Citizens Committee for Broadcasting,* 436 U.S. 775, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978). Similar variations of course exist for limitations on the print media.

The claims here seem likely to trigger a range of standards. For example, plaintiffs challenge § 10 of the Act, which among other things denies cable operators immunity from liability for programming "that involves obscene material". Whatever the merits of the claim, the section is directed to content and subject matter—though not to viewpoint—and raises different problems from those of non-content provisions. See, e.g., Geoffrey R. Stone, Content Regulation and the First Amendment, 25 William & Mary L.Rev. 189 (1983) (discussing Supreme Court's ambiguous treatment of subject-matter restrictions).

By contrast, the attack on § 6, requiring cable operators to obtain consent from commercial broadcasters for retransmission of their programs (unless the broadcaster has elected to use the must-carry provisions), turns—as framed by the plaintiffs themselves—on the relation of the provision to copyright provisions and concepts. Plaintiff Daniels Cablevision, Inc.'s Memorandum in Support of Summary Judgment at 33–37. Apart from involving the cable industry and the First Amendment, the claim seems as different from the attack on § 10's obscenity clause as can be imagined. Thus, while special characteristics of the cable television industry may give rise to some general approach, as has proved true for over-the-air TV, that approach will supply only one element— and likely a relatively small element—of the reasoning needed for the disposition of each claim.

The third connecting characteristic—the practical links between §§ 4 and 5 and the other attacked provisions—are not so close as to justify grouping the provisions as a "common nucleus of operative facts". Plaintiffs offer some interconnections, but only tenuous ones. For example, they point out that § 3, which prescribes rate regulation, defines a "basic package" of services that are to be the subject of that regulation and includes the signals required to be carried under §§ 4 and 5 within the definition. See Cable Act, § 3(b)(7), codified at 47 U.S.C. § 543(b)(7). But their argument suggests no reason why the imposition of price controls is rendered more constitutionally dubious simply by the presence of such signals in the regulated package. Thus plaintiffs have identified no links between §§ 4 and 5 and other sections so close as to bring their attacks on the latter squarely within the "same case or controversy".

Finally, even if § 1367 were applicable in the three-judge context at all, and even if we believed that the challenges to sections other than §§ 4 and 5 fell within its "same case or controversy" requirement, § 1367(c) authorizes us to decline jurisdiction on several grounds. Most pertinent is § 1367(c)(2), allowing rejection of jurisdiction if a claim within § 1367(a) "substantially predominates over the claim or claims over which the court has original jurisdiction". There is no doubt that in the aggregate plaintiffs' avalanche of claims predominates over the §§ 4 and 5 ones. If one or two of the additional claims were especially linked to the core claims, we can imagine a disaggregate approach, in which we would consider whether such a claim or claims predominated. But as no claim is so especially linked—indeed, none appears to us

even to satisfy the threshold requirement of § 1367(a)—it would be arbitrary to single out one or two claims as candidates for separate application of the predominance test. Accordingly, we believe that the aggregate approach to assessing predominance is proper here, and calls for a rejection of jurisdiction.

Although we thus sever the constitutional challenges to sections other than §§ 4 and 5, we do not address plaintiffs' argument that, if we should find all or part of §§ 4 and 5 unconstitutional, the remedy should include invalidation of other sections of the Act, notably § 6. As we have said, § 6 provides (with some exceptions) that cable operators may not "retransmit" the signal of a commercial broadcaster without its consent, unless the broadcaster has elected to use the must-carry provisions of § 4. The remedial argument runs, in essence, that Congress would not have wanted § 6 to stand alone, without §§ 4 and 5. "Whether an unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent...." *Regan v. Time, Inc.,* 468 U.S. 641, 653, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984); see also *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987). If we should in fact hold §§ 4 and 5 unconstitutional, we will have to evaluate plaintiffs' theory against the Supreme Court's severability standard in deciding on the proper relief. But that is no reason to sweep within this lawsuit the *independent* constitutional attack on § 6, which, as we have seen, is said by plaintiffs to turn on concepts akin to copyright or on the section's interaction with copyright provisions.

\* \* \* \* \* \*

.We sever from this lawsuit all claims other than those challenging the constitutionality of § 4 or § 5 and relinquish those claims to the United States district court for the District of Columbia apart from this three-judge panel.

**SPORKIN, District Judge, concurring.**

I concur in the result. I believe that whether a three judge statutory court established under Section 23 of the Cable Act has jurisdiction to consider certain other related claims is strictly a question of discretion.

I concur with the majority's decision in this case to exercise this discretion by declining to consider the various pendent claims put forth by certain of the parties. I believe it is prudent for this Court to focus only on the Section 4 and 5 challenges to the Cable Act and to refer the balance of the constitutional and other claims to a traditional single judge court.

**JACKSON, District Judge, dissenting.**

I regret that I am unable to concur in Circuit Judge Williams' opinion of December 23, 1992, limiting the jurisdiction of the three-judge district court to Sections 4 and 5 of the Cable Act of 1992.

The Supreme Court has instructed that "the starting point for interpreting a statute is the language of the statute itself," and, "absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 109, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Section 23 of the Cable Act of 1992 states that "*any civil action* challenging the constitutionality of section [4] or [5] of this Act ... shall be heard by a district court of three judges...." These cases are all civil actions challenging, albeit *inter alia,* the constitutionality of sections 4 and 5 of the Act. If Congress had intended to limit the jurisdiction of the three-judge court (and the concomitant direct appeal of right to the Supreme Court) to only *claims* challenging the constitutionality of those sections, it could have done so in several ways.[1] It did not, and I do not find in Judge Williams' generalized judicial obser-

---

1. E.g., "No interlocutory or final judgment, decree or order holding section [4] or [5] to be unconstitutional shall be entered by a district court of less than three judges ...;" *or* "[a]ny claim challenging the constitutionality of section [4] or [5] in any civil action filed under this Act shall be severed for hearing by a district court of three judges ..."

vations as to the wastefulness of three-judge courts, the burden imposed upon the Supreme Court by direct appeals of right, and the intricacies of supplemental jurisdiction, any evidence of a "clearly expressed" congressional intention to repudiate the language of the statute as they wrote it. Consequently, I conclude that the three-judge court is statutorily required to hear these cases in their entirety, and I respectfully dissent.